661 So.2d 1100 (1995)
Joseph PAPA and Pete Papa, Plaintiffs-Appellees,
v.
CITY OF SHREVEPORT and Metropolitan Zoning Board of Appeals, Defendants-Appellants.
No. 27045-CA.
Court of Appeal of Louisiana, Second Circuit.
September 29, 1995.
*1101 Jerald N. Jones, City Attorney of Shreveport by Terri Anderson-Scott, Roland Achee, Shreveport, for Appellant.
Michael H. Wainwright, Shreveport, for Appellee.
Before SEXTON, NORRIS, BROWN, WILLIAMS and STEWART, JJ.
STEWART, Judge.
The City of Shreveport ("city") and the Metropolitan Zoning Board of Appeals ("ZBA") appeal a judgment of the district court in favor of the plaintiffs, Joseph Papa and Pete Papa, granting a "special exception use" to permit the sale of low-alcoholic content beverages for on-premises consumption at the Papas' deli-restaurant located at 545 East Washington Street in Shreveport. For the reasons that follow, we reverse the judgment of the district court and reinstate the decision of the ZBA.

FACTS
Joseph and Pete Papa ("Papas") own and operate a grocery store located at 545 East Washington Street in Shreveport. The establishment was originally operated as a fried chicken outlet before housing a series of three lounges over a period of fifteen years. The present grocery store has been in operation since 1989. Among other grocery items, the store has a deli counter and also sells beer for off-premises consumption. In 1993, the Papas applied to the ZBA for a special exception use to operate a deli-restaurant with on-premises consumption of beer. Prior to this date, the Papas unsuccessfully attempted to obtain a special exception from the ZBA that would have allowed them to reconvert the property to a lounge for on-premises consumption of all kinds of beverages.
A public hearing was held before the ZBA on the plaintiff's current application on October 6, 1993. Without benefit of testimony and evidence presented at the hearing, the ZBA staff determined that the application was consistent with ZBA Liquor Guidelines regarding commercial locations, zoning, residential property, and off-street parking.
At the hearing, six people spoke in opposition to the Papas' application and thirteen others stood to indicate their opposition. The opponents included the Montessori School, the Stoner Hill Action Group, the Anderson Island homeowners, and Reverend Ernest L. Woodson, Pastor of the Macedonia Baptist Church. The board voted unanimously to deny the Papas' application.
The Papas filed an administrative appeal to the Shreveport City Council. When the matter came up for consideration on November 9, 1993, the council permitted Reverend Ernest L. Woodson to read aloud a letter previously sent by him to a council member in opposition to the Papas' appeal. That letter later became apart of the record and all council members were given an opportunity to read it. At the request of one of its members, the council voted to suspend its procedural rules in order to allow Reverend Woodson the opportunity to address the body. Neither of the Papas requested or chose to address the council. The council *1102 later voted at the meeting to deny the Papas' appeal.
The Papas then filed a petition in district court to overturn the ZBA and city council decisions. The Papas alleged that they were denied their constitutional rights to due process of law and equal protection of the law. First, they contend they were denied due process by the action of the Shreveport City Council in allowing Reverend Woodson to address the Council on November 9, 1993, without allowing the Papas to respond. Next, they allege they were denied equal protection by the action of the ZBA in approving another application for a special exception use filed by Mary Matassa for the on-premises consumption of beer from a deli-restaurant located at 1327 Captain Shreve Drive in Shreveport, while denying their application. The Papas contend that there is no rational basis for denying their application while approving that of Mary Matassa, and hence, they allege the denial of their application is arbitrary and unreasonable.
After trial on the merits, the district court rendered judgment in favor of the Papas, holding that the ZBA and city council had violated the Papas equal protection and due process rights and ordered that they be issued a special exception use permit to sell low-alcoholic content beverages on the premises. The trial court found that there were no material factors that formed a basis of reasonable distinction between the Papa application and the Matassa application. The court also found that the Papas' due process rights were violated when the city council allowed the Reverend Woodson to read his letter.
The city and ZBA now appeal the judgment of the district court alleging the following eleven assignments of error:
(1) In finding that the plaintiffs were denied due process of law because the city council permitted Reverend Woodson to read a letter that was already in the record of the appeal from the ZBA to the city council.
(2) In holding that the remedy for an alleged denial of due process is to decide the case on the merits in favor of the person allegedly deprived of due process.
(3) In failing to hold that by not objecting at the time and by not asking for equal time the plaintiffs waived any objection to the reading of Reverend Woodson's letter.
(4) In apparently holding that the ZBA was bound by the assessment of its staff to the effect that the plaintiffs' application was consistent with the ZBA's "Liquor Guidelines."
(5) In finding that the only comment made by ZBA members during the deliberative phase of the hearing was one allegedly attributed to Sara Herrington, the substance of the alleged statement having been that the plaintiffs' application should be denied "due to neighborhood opposition."
(6) In finding that Councilman Keith Hightower thought that the plaintiffs' application was for hard liquor.
(7) In finding that the establishments shown by red dots on P-12 are in close proximity to the plaintiffs' property.
(8) In finding that "No material factor exists that would give rise to a basis of a reasonable distinction between the Papas' application and the Matassa application."
(9) In holding that the plaintiffs were denied equal protection of the laws.
(10) In substituting its own judgment for that of the ZBA, and in reversing the ZBA and the city council.
(11) In granting the plaintiffs a special exception to sell alcoholic beverages for on-premises consumption at 545 E. Washington Street in Shreveport.
It is unnecessary for us to decide the merits of each of appellants' eleven assignments of error inasmuch as the crucial issue in this case is whether the ZBA acted arbitrarily and unreasonably in denying the Papas' application for a special exception use to sell beer for on-premises consumption. All other issues presented by the appellants' assignments of error are subsumed in this issue, except those pertaining to the question of a due process violation, which we will also address.

*1103 STANDARD OF REVIEW
A prima facie presumption of validity attaches to zoning board actions. A reviewing court cannot substitute its own judgment; it cannot interfere absent a showing that the Board was arbitrary and capricious or abused its discretion. Clark v. City of Shreveport, 26,638 (La.App. 2 Cir. 5/10/95), 655 So.2d 617, citing Cross v. City of New Orleans, 446 So.2d 1253 (La.App. 4 Cir.1984), writ denied 449 So.2d 1359 (La.1984); Christopher Estates, Inc. v. Parish of East Baton Rouge, 413 So.2d 1336 (La.App. 1 Cir.1982). Generally, the action of a governmental body is arbitrary and capricious and unreasonable if it bears no relation to the health, safety, or general welfare of the public. Clark v. City of Shreveport, supra; Christopher Estates, Inc. v. Parish of East Baton Rouge, supra.
The test of whether an action is arbitrary or capricious is whether the action is reasonable under the circumstances. Clark v. City of Shreveport, supra; Castle Investors v. Jefferson Parish Council, 472 So.2d 152 (La.App. 5th Cir.1985), writ denied 474 So.2d 1311 (La.1985).
Where permits are granted in similar situations and refused in others, the refusal to grant a permit may constitute non-uniform application of zoning ordinances that is arbitrary and unreasonable. Clark v. City of Shreveport, supra; See also Kiser v. Parish of Jefferson, 498 So.2d 115 (La.App. 5 Cir.1986), writ denied 500 So.2d 423 (La. 1987).
A challenge to a zoning decision in Louisiana is a de novo proceeding in which the issue is whether the result of the legislation is arbitrary and capricious, and is therefore a taking of property without due process of law. Palermo Land Co. v. Planning Comm'n of Calcasieu Parish, 561 So.2d 482 (La.1990); Hernandez v. City of Lafayette, 399 So.2d 1179 (La.App. 3 Cir.1981); Westside Lumber & Supply v. Parish of Jefferson, 357 So.2d 1384 (La.App. 4 Cir.1978).
A reviewing court does not consider whether the district court manifestly erred in its findings, but whether the zoning board acted arbitrarily, capriciously or with any calculated or prejudicial lack of discretion. Thus, even when there is no manifest error in the findings of the district court, we are bound to reverse the decision of the trial court and reinstate the decision of the board. Gertler v. City of New Orleans, 346 So.2d 228 (La.App. 4 Cir.1977).
Whenever the propriety of a zoning decision is debatable, it will be upheld. Palermo Land Co. v. Planning Comm'n of Calcasieu Parish, supra; Hunters Grove Homeowners Association v. Calcasieu Parish Police Jury, 422 So.2d 673 (La.App. 3 Cir.1982); Hernandez v. City of Lafayette, supra.

ANALYSIS
Applying the aforementioned legal precepts to the instant case, we find that the trial court substituted its own judgment and incorrectly held that the ZBA and the council acted arbitrarily and capriciously in denying the Papa's application for the special exception use.
Charles Kirkland, the executive director of the Metropolitan Planning Commission, testified that when an individual makes application to the ZBA for a special exception use, the staff makes an assessment based on a land use report, a site visit by staff members, and other information the staff determines is needed by the council to make a decision. However, the ZBA was not compelled to accept the recommendations of the staff, particularly in light of the fact that a hearing on the matter was not conducted until after the staff made its initial findings. Additionally, the report specifically states the following on its face:
"The information stated above is the result of discussion by a staff review team. The staff assessment is made without benefit of information which may be presented at the public hearing, and is therefore subject to change. The Board members use all information available to them in making their decision."
Thus, the staff's recommendations are to be considered by the council in conjunction with the testimony and evidence presented by those who reside in the affected neighborhood.
*1104 The record reveals that at the hearing six people spoke in opposition to the plaintiff's application and thirteen others stood to indicate their opposition as well. Opponents of the Papa application presented a letter from the president of the Stoner Hill Neighborhood Action Group and a petition with approximately 30 signatures from area residents.
Several letters from the parents of children at the Montessori School, located across the street from the site, were submitted in opposition, along with a letter from the president of a parent group and a letter from the board of trustees with 11 signatures. Although the school is over 300 feet away from the Papa's site and cannot be considered alone as the basis for a refusal to grant a special exception use, the school is within close proximity to the Papas' site and was one of several factors considered by the council. Opponents cited the exposure of school age children to drinking and the increased flow of traffic in the area as their primary concerns.
Next, Reverend Woodson from Macedonia Baptist Church expressed his opposition to the proposal, citing the undesirable behavior occurring at the same location when the property was previously operated as a lounge.
Sam Gregorio, a resident of the area and a representative of the Anderson Island homeowners, the Montessori School, the Stoner Hill Neighborhood Action Group, and the Macedonia Baptist Church, stated that he and his neighbors agreed that on-premises consumption of alcohol "was inappropriate for the neighborhood." Gregorio expressed concerns about the proximity of the site to the school, the devaluation of property, traffic problems, and the incompatibility of on-premises consumption with the residential nature of the neighborhood. A petition was presented with more than one hundred signatures of residents from the neighborhood opposing the re-zoning of the Papas' store to allow the sale of alcohol.
Plaintiffs also presented a petition with 300 signatures. However, many of those who signed did not live in the area.
Additionally, although the Papa's site is zoned B-3, denoting it as a community business district, it is surrounded by a residential neighborhood. There are numerous businesses located in the area, but the only one with on-premises consumption near the Papas' site is Maurice's Restaurant, and it is several thousand feet away from East Washington Street and is located on the service road near Youree Drive.
The Papas contend that the decision of the ZBA was arbitrary and unreasonable. As the basis for this contention, plaintiff's argue that on the same day their application was denied, the board granted a similar application for on-premises consumption to Mary Matassa, the owner of Zia Maria's Deli-Restaurant located at 1327 Captain Shreve Drive in the Shreve Island subdivision. This court, however, finds that the two cases are factually distinguishable.
In the Matassa case, there was first very little opposition to the proposal to add on-premises consumption at Zia Maria's. Although that establishment is also bordered by a neighborhood, an elementary school, and an apartment complex, there was no opposition present at the initial hearing and only one letter of opposition was presented to the board. At the rehearing on the Matassa application on December 9, 1993, only two individuals spoke in opposition to the application.
Moreover, it was established at the Matassa hearing that there is another business with on-premises consumption already in place within close proximity to the Matassa site. Johnny's Pizza is located 285 feet from the northwest corner of the intersection of East Preston and Captain Shreve Drive and is almost due west from Zia Maria's.
Shreve Island Elementary School is also located seven blocks away from Zia Maria's, eliminating concerns about parking, exposure of school-age children to drinking, and increased traffic in the area.
Finally, the decision to permit on-premises consumption at Zia Maria's appears to be far more compatible with the nature of the area than in the Papas' case. Although the Matassa site is bordered by a residential neighborhood, *1105 this small area on Captain Shreve Drive has been used commercially since the Shreve Island subdivision was opened and has served as support businesses for the surrounding neighborhoods.
Thus, we find that the actions of the Board and the council bear a significant relationship to the safety and general welfare of the public. There is sufficient evidence in the record to support the Board's decision to deny the Papas' application. At very least, the decision was a debatable one and as such, the district court was compelled to uphold the decision of the ZBA.
We also conclude that the trial court erred when it held that the Papas' due process rights were violated when Rev. Woodson was allowed to read a letter in opposition to the proposed application on December 9, 1993, after the October 6, 1993 hearing. The facts reveal that the members of the council received a copy of the letter, which became a part of the record, and reviewed it before Reverend Woodson spoke. Additionally, the council, in compliance with § 10.1 of its Rules of Procedure, properly voted to suspend its rules in order to allow Reverend Woodson an opportunity to read the same letter to the council. Neither the applicants nor counsel for the applicants, who were present at the meeting, responded to the council's decision or addressed the minister's comments. Although plaintiffs' assert that a number of Reverend Woodson's comments were inaccurate, no one stood in order to demand equal time to correct the alleged errors.

DECREE
For the reasons expressed, we hold that the decision of the council to deny the Papas' application was not arbitrary or capricious. The judgment of the trial court is reversed, and the decision of the ZBA is reinstated.
REVERSED AND RENDERED.
NORRIS and SEXTON, JJ., dissent and assign written reasons.
NORRIS, J, dissenting.
The trial court correctly found that the Papas were denied due process of law when the City Council suspended its rules and allowed Rev. Woodson to speak in opposition to the Papas' application without affording the Papas the same right. See, e.g., Hernandez v. City of Lafayette, 399 So.2d 1179, 1183 (La.App. 3d Cir.), writ denied 401 So.2d 1192 (1981). The trial court also found that this denial of due process was prejudicial to the Papas. Accordingly I would affirm this aspect of the trial court's judgment.
Rather than rendering judgment which in effect grants the special exception use application, however, I would remand the matter to the City Council for another hearing that affords the Papas due process.
I respectfully dissent.
SEXTON, Judge, dissenting.
I believe the majority incorrectly evaluates this application as if it were for a "variance" rather than a "special exception."
The term "special exception" designates a species of administrative permission which allows a property owner to put his property to a use which the regulations expressly permit under conditions specified in the zoning regulations themselves. A special exception is granted by the zoning hearing board after a public hearing, upon a finding that conditions of the zoning ordinance are satisfied. 83 Am.Jur.2d, Zoning and Planning § 958, at 802 (1992). These conditions are found in the Liquor Guidelines, Metropolitan Zoning Board of Appeals, as well as the applicable state statutes and local ordinances.
Unlike a "variance," which involves the varying of a zoning ordinance, a special exception deals with compliance with the ordinance and imposes upon a board of zoning appeals the duty to grant an exception once the conditions specified in the ordinance have been met. A special exception is superior to a variance or a nonconforming use in an attempt to expand the use as of right because it allows the owner to use his property as expressly permitted by the zoning ordinance, suggesting that the permitted use is in harmony with the zoning plan and does not have an adverse impact on the neighborhood. 83 Am.Jur.2d, Zoning and Planning § 960, at 804 (1992).
*1106 There can be no dispute over whether the Papas met all of the requirements under the ZBA Liquor Guidelines for approval of the special exception use. If the requirements of the zoning ordinance are met, the burden of proving the adverse effect on the neighborhood lies with the opponents to the requested use. See Cook v. Metropolitan Shreveport Board of Appeals, 339 So.2d 1225 (La.App.2d Cir.1976), writ denied, 341 So.2d 1123 (La. 1977). Thus, the question is whether the ZBA correctly found that the opponents showed an adverse impact on the neighborhood.
The ZBA hearing on the matter was held on October 6, 1993. Several people spoke in opposition to the request, and after the hearing, Ms. Herrington of the ZBA moved to deny the application, which was seconded by Mr. Mims. Citing that the proposed use was within close proximity to a school, a church, and an apartment complex, the motion to deny was unanimously approved by the board.
Thus, the Papas contend that the ZBA acted arbitrarily when they denied their application because they had approved the similarly-situated Matassa application the same day.
Affording the ZBA decision a presumption of validity, I can only assume that the ZBA found that approval of a special exception to allow the Papas to operate a deli-restaurant with on-premises beer consumption would be injurious to the neighborhood because of its close proximity to a school, a church, and an apartment complex. Nevertheless, if the Matassa circumstances are substantially similar to the Papa circumstances such that the decision to deny the Papa application appears to be arbitrary or an abuse of discretion resulting in the non-uniform application of the zoning ordinances, the decision of the ZBA cannot stand. Kiser v. Parish of Jefferson, 498 So.2d 115 (La.App. 5th Cir.1986), writ denied, 500 So.2d 423 (La.1987).
The Papa location is zoned B-3 and is designated by the city's Master Plan as principally commercial. The building stands on the fringe of a commercially active area. Two blocks to the west and southwest of the site is Youree Drive, a main thoroughfare of the city, with several commercial establishments on each side of Youree Drive, including some that serve food and alcoholic beverages. Between Youree Drive and the grocery store is the Powell Buick car dealership. Further to the south and southeast are several more restaurants and other businesses. To the east and southeast are some apartments and the Anderson Island subdivision, a subdivision of moderately-priced homes. To the north and northeast is the Stoner Hill subdivision consisting primarily of lower-priced homes. A Montessori school lies diagonally across the street from the northeast corner of the property, but well beyond 300 feet.
The Matassa location is zoned urban residential and is on the fringe of Shreve Island subdivision, a subdivision somewhat similar in character to Anderson Island, but more upscale. The restaurant itself is in a building next to a bicycle shop and snow cone stand in a small commercial enclave on Captain Shreve Drive about one block away from East Preston Street. East Preston is a fairly busy thoroughfare connecting East Kings Highway and the Clyde Fant Parkway. On the corner of Captain Shreve and East Preston, on the opposite side of the street from the Matassa site, there is a Shell Station and a Circle K, and on the same side of Captain Shreve, there is a Texaco gasoline station. Directly to the north of the site are residences. Captain Shreve Elementary School lies among those residences several blocks away and one block to the east of Captain Shreve Drive. Residences are also located to the south of the intersection of Captain Shreve and Preston. Directly across the street are the now abandoned Beall-Ladymon General Offices. Johnny's Pizza is located on East Preston just to the west of the Shell Station.
The city and the ZBA attempt to distinguish the Matassa site from the Papa site by arguing that alcohol sales are already allowed at Johnny's Pizza, which is closer to the Matassa site than the restaurants that sell alcoholic beverages near the Papa site. I agree with the district court's conclusion, however, that the differences between the two sites are distinctions without a difference. *1107 In fact, from the standpoint of the guidelines and zoning ordinances, the Papa site appears to be the more suitable site for a deli-restaurant with on-premises beer consumption, given its zoning and proximity to other commercial establishments.
It is instructive to examine the differences in the two situations. The Papa site is zoned B-3 and is designated in the master plan as "principal commercial." On the other hand, the Matassa site is zoned B-2, the minimum acceptable zoning for alcohol sales under the ZBA Liquor Guidelines, and is designated on the master plan as "urban residential." The Papa location is on the periphery of a heavily commercial area with numerous bars, lounges and restaurants serving alcohol in the immediate vicinity. By contrast, the Matassa site is located in a small relatively compact light commercial area in the midst of a residential neighborhood more upscale than the residential area bordering the Papa site. Indeed, in contrast to the Matassa site, dwellings near the Papa site were located on property zoned B-2.
Also of interest is that the Matassa site shares its building with a bicycle shop, while the Papa location is free-standing. Moreover, we note that the staff assessment on the Papa site indicated that the application was consistent with ZBA Liquor Guidelines with "separation from residentially-zoned property."
Hence, I believe that the trial judge was eminently correct when he observed in his opinion that "[n]o material factor exists that would give rise to a basis of a reasonable distinction between the Papas application and the Matassa application. In fact, the discernable differences seem to point to the Papas' location being the more suitable for a deli-restaurant with on-premises consumption of beer, as compared to the Matassa's location."
It appears, then, that the only distinction favoring the Matassa site is the lack of the vocal and vigorous opposition to that application.
The proposed deli-restaurant at the Papa site is not substantively different from the Matassa Zia Maria's, Johnny's Pizza, or any other of the dozens of small family-owned restaurants located throughout Shreveport in similar neighborhoods that serve beer with their menu.
Rev. Woodson's concern about fighting, shooting, and loud arguments into the night would appear to be an opinion based upon religious opposition to alcoholic beverages in general and video poker in general (which is not at issue here) and perhaps the mistaken belief that the Papas were attempting to open a bar or lounge. The testimony of Charles Kirkland, the executive director of the Metropolitan Planning Commission is directly to the contrary. He specifically testified that the concerns expressed by Rev. Woodson were not circumstances that usually occurred at deli-restaurants serving beverages of a low alcoholic content.
Importantly, the majority opinion is not served by the asserted close proximity to a church and a school. Both are located beyond the 300-foot requirement of LSA-R.S. 26:281. The law has been clear for quite some time that zoning authorities may not use a proximity of over 300 feet to such an institution as the basis for denial of a permit to sell beverages of a low alcoholic content. Rayborn v. Livingston Parish Police Jury, 479 So.2d 401 (La.App. 1st Cir.1985) ("[N]earness of location to three churches is immaterial and cannot be considered by the police jury as long as the location is outside the zone prescribed by La.R.S. 26:280(C)."[1]Id. at 403); see also, Barney's Family Market v. Avoyelles Parish, 452 So.2d 822 (La.App. 3d Cir.1984) (Authority of police jury to restrict location of sale of alcoholic beverages is limited to within 300 feet of church or school); cf., Shop-A-Lott, Inc. v. Town of Many, 427 So.2d 514 (La.App. 3d Cir.1983) (Ordinance which, via its method of measurement, extended the prohibition of alcohol sales beyond three hundred feet exceeded the authority granted by the Legislature to parishes and municipalities); Randolph v. Village of Turkey Creek, 240 La. 996, 126 So.2d 341 (1961) (Extension beyond three hundred foot zone by local authorities is ultra vires); Marino v. City of Baton *1108 Rouge, 61 So.2d 588 (La.App. 1st Cir.1952) (City's authority to deny permit went no further than to prescribe 300 feet as the prohibited distance from a church for the sale of beer).
The aforesaid considered, I can only conclude that the ZBA's unanimous vote to deny the Papa application while unanimously approving the Matassa application was simply a response to the vocal opposition presented at the meeting to the Papa application. I can perceive no rational basis for treating the two properties differently, given the similarities of the two sites and the differences which favor the Papa site.
The purpose of a hearing regarding a special exception use is to afford opponents to the use a fair opportunity to present their case in showing an adverse effect on the neighborhood. On the other hand, a special exception use is a permitted use under the zoning ordinance so long as the use conforms to the guidelines promulgated by the board. The ZBA should apply the guidelines uniformly. Indeed, the very purpose of the guidelines is not only to protect adjacent property owners, but also to ensure that property owners' rights regarding the permitted use are protected. 83 Am.Jur.2d, Zoning and Appeals § 963, at 806 (1992).
I therefore agree with the trial court that the action of the ZBA and the city in denying the Papa application was arbitrary and capricious. See Kiser v. Parish of Jefferson, supra, and Cook v. Metropolitan Shreveport Board of Appeals, supra.
For the foregoing reasons, I respectfully dissent from the opinion of the majority and, therefore, would not address the appellant's due process contentions.
NOTES
[1] Reenacted in 1987 as LSA-R.S. 26:281(C).