719 So.2d 410 (1998)
Carl J. KING, et ux.
v.
CADDO PARISH COMMISSION.
No. 97-C-1873.
Supreme Court of Louisiana.
October 20, 1998.
Rehearing Denied December 18, 1998.
*411 Dannye W. Malone, Judi Milke, Shreveport, for Applicant.
Ronald J. Miciotto, Clair F. White, Joseph L. Shea, Shreveport, for Respondent.
*412 JOHNSON, Justice.[*]
This is a zoning case involving a request for a special exception use and variance in order to operate video poker at a truck stop in Caddo Parish. The issue which must be resolved is whether the Caddo Parish Commission (hereafter referred to as the "Commission") abused its discretion when it reversed the decision of the Zoning Board of Appeals (hereafter referred to as the "ZBA") which granted the special exception use and variance to the property owner.
The trial court rendered a judgment on October 4, 1996. The court noted the existence of three other establishments with video poker located within a two mile radius of the property, and concluded that there were more than adequate measures in place to prevent minors from entering the area designated for video poker. In comparing the Commission's decision to the ZBA's decision, the trial judge was convinced that the Commission reacted purely to citizen objection to legalized gambling. Conversely, the court found that the ZBA had ordered and reviewed a staff report, inspected the site, required additional safeguards ensuring the public's safety and welfare, considered that other businesses with video poker were located within the area, and conducted a hearing at which the proposal was approved by unanimous vote. Finding that "[t]he maladies which may accompany that industry [gaming] into Louisiana communities already exists", the trial judge determined that there was no evidence of any threat to public health, safety or general welfare that was not already in existence in the area. The trial court went on to conclude:
"This record does not support the conclusion that the Caddo Parish Commission accorded the decision of the ZBA the proper weight to which it was entitled. And even if no such consideration or weight was warranted or required by law, the facts presented by this case can only lead to one reasonable conclusion: the Caddo Parish Commission's actions must be considered arbitrary and capricious in these circumstances."
The trial court reversed the action of the Commission and reinstated the ZBA's decision.
The Commission appealed to the Second Circuit. In an unpublished opinion, the appellate court affirmed the trial court's judgment. Relying on the principle of law articulated in Papa v. City of Shreveport, 27,045 (La.App. 2 Cir. 5/10/95); 661 So.2d 1100; writ denied, 97-2544 (La.1/5/96); 666 So.2d 295, the court ruled that actions of a government body which are not based on rational, reasoned considerations of public health, safety and welfare, are arbitrary and capricious. The Second Circuit determined that the trial court did not err in finding that the Commission acted arbitrarily and unreasonably when it reversed the ZBA's decision to approve plaintiffs' application.
Aggrieved by the decisions rendered by both lower courts, the Commission sought relief from this court and we granted its application. Carl J. King, et ux. v. Caddo Parish Commission, 97-1873 (La.1/9/98); 705 So.2d 1084.

FACTS AND PROCEDURAL HISTORY
Carl J. King and Carol King operate the S & A Truck Stop located in the 12300 block of Mansfield Road in South Caddo Parish.[1] The property is located in a B-2 zone near Keithville, Louisiana in what is generally considered a rural area. Several businesses are located within 300 to 500 feet of the truck stop and include a tire store, taxidermist and an establishment engaging in the sale of cemetery monuments. Both single-family and multi-family residences are located in the surrounding area.
Keithville Elementary and Keithville Middle School are both located about one mile from the site. Approximately four miles away is the North Keithville Baptist Church. The plaintiffs erected a building which contains over 5,100 square feet and complies *413 with the Louisiana State Police requirements necessary to obtain the appropriate license and approval for installation of video poker machines. A partition was installed between the area to be used for video poker and the remaining area to be used as a convenience store. The area designated for video poker has a separate entrance with tinted windows, and persons under the age of 21 are prohibited from entering.
Initially, Mr. King appeared before the ZBA on June 15, 1995 and requested a special exception use and variance to permit a video poker gaming establishment to operate on a 24-hour basis on his property. The ZBA voted to deny the gaming request but approved the request for 24-hour operation. King appealed the decision rejecting his gaming request to the Caddo Parish Commission. However, the appeal was withdrawn on August 23, 1995.
The plaintiffs made certain improvements and refiled their request for a special exception use and variance for the property. The ZBA then made a site inspection. After due notice was mailed to area residents, the ZBA convened a public hearing on January 11, 1996. The plaintiffs were represented at the hearing by their attorney, Ron Miciotto, who stated among other things that all construction was complete, certain parking concerns were corrected, signs were placed at the entrance and exits, and that Keithville-Lodge Road had been refurbished.[2] Also appearing to testify were area residents who opposed the request for a special exception use and variance. Present at the ZBA hearing to testify against the video poker permit were R. Michael Stowell, a resident of Keithville and pastor of First Baptist Church of Keithville, and Bob McCartney, pastor of Graywood Baptist Church.
In his presentation before the ZBA, Reverend Stowell stated that he was opposed to the expansion of gaming outside of Shreveport since there was already enough gaming in the area and expansion would not be healthy for the community. He referred to a magazine article, which detailed the serious gambling related problems among teens, and concluded that providing more access to teens translates to increased participation in gambling. Referring to a recent report from the Louisiana Moral and Civic Foundation, he stated that of the 57,000 pathological gamblers, 27,000 are under the age of eighteen. Fearing that age controls on video poker would not be enforced, he closed his testimony by stating that gaming is not family entertainment, and that there was no need for more gaming in the area.
Reverend McCartney testified that he too was opposed to gaming and that one half of the signatures to a previous petition opposing video poker at the S & A truck stop came from his congregation. He stated that the ZBA should reject King's proposal because "our children don't need any more gambling". He expressed his concern for kids attending the nearby middle school who will walk by this establishment, enter the convenience store and look into the gaming area. After hearing from both sides, the application was reviewed and approved by unanimous vote.
The Keithville Baptist Church sought review of the ZBA's decision before defendant, the Caddo Parish Commission. A hearing before the Commission took place on February 22, 1996 and the evidence included the record presented to the ZBA and live testimony. Reverend Stowell, appeared again in opposition to the application. He voiced his opposition to gambling and expressed his feeling that persons who are opposed to gambling have not been given the right to vote on whether they want this type of activity in their area. He testified about the negative financial aspect of gambling and how it impacts those who can least afford it, noting that the subject property was located near two lower income neighborhoods. Concerned with the possibility that young people would be exposed to gambling, he referred to the fact that the property was located within close proximity to two schools. In his estimation, granting the video poker license would lead to the establishment of more bars *414 in Keithville and the possibility of other businesses which allow lewd behavior.
Tommy Armstrong then addressed the Commission. Mr. Armstrong resides within one mile of plaintiffs' property and is a resident of Keithville. He spoke out against gambling and video poker and the effect that it will have on the community because of the close proximity of this establishment to schools and churches. He cited a number of publications which suggest corruption in state government can be attributed to video poker. He also argued that granting this exception would create "spot zoning"[3] because the property is located in B-2 zone.
Mike McLauren, pastor of North Keithville Baptist Church, informed the Commission that he had obtained 300 signatures on a petition opposing video poker in Keithville. Concerned with the safety, health, welfare and morality of the Community, he described the area near plaintiffs' truck stop as a "high crime area", suggesting that drug deals were often visible, and cited the statistical increase in crime when gambling was introduced in Gulfport, Mississippi. He made reference to the high number of pathological gamblers in the state and the negative financial impact that gambling had on families. Reverend McCartney suggested that he spoke on behalf of others who were unable to attend the hearing and voice their opposition to increased video poker because the hearing was scheduled at 2:00 P.M. on a work day.
Mr. Miciotto, speaking on behalf of his clients asked the Commission to affirm the decision of the ZBA. After everyone was given an opportunity to address the Commission, a vote was taken. Voting 7-4[4], the commissioners denied the application, effectively overruling the decision rendered by the ZBA.
The Kings then filed a petition in the district court seeking injunctive relief. They alleged that the Commission's decision was not based on the proposed use of the property. To substantiate their claim, the plaintiffs served subpoenas on members of both the ZBA and the Commission. Defendants filed a motion seeking to quash the subpoenas served on all Caddo Parish Commissioners. Additionally, the defendants filed an exception of unauthorized use of a summary proceeding and an exception of lack of jurisdiction over the person. On appeal, defendant's application and request for a stay were denied. Supervisory writs were filed with this court and pursuant to a May 9, 1996 order, the motion to quash the subpoenas was granted. Carl J. King, et ux. v. Caddo Parish Commission, 96-CC-1099 (La.5/9/96); 672 So.2d 912.
The district court judge denied defendant's exceptions and trial in this matter took place on May 2 and 3, 1996. During trial, several witnesses testified. As director of the Metropolitan Planning Commission, Judith Battle stated her duties include the oversight of all cases presented to the ZBA. According to her testimony, special exception uses such as the request made by the Kings are decided on a case-by-case basis and the present controversy did not involve an instance of spot zoning.[5] She classified the property as a truck stop in a B-2 zone with a request to add video poker.[6] After the completed application was filed with a site plan, she stated that members of the planning commission's staff reviewed the documents, prepared a report and inspected the site. Review of plaintiffs' application included ingress and egress, traffic volume and available space. Other concerns were proper monitoring to prevent the possibility of under-age gaming, privacy fencing, and adequate lighting. The ZBA wanted to insure that the area designated for video poker had an entrance separate *415 from the remaining areas of the store in order to prohibit access to anyone under the age of 21. The ZBA requested that a fence be erected along one side of the parking lot. In addition to building the fence, plaintiffs paved an adjacent road to satisfy any concerns anticipated by an increase in traffic.
Jim Roberts, Assistant Police Chief of Shreveport provided testimony regarding a crime study that had been prepared. He testified that since gaming was introduced in Caddo Parish, there was no overall increase in crime. Instead, there was a decrease both in 1995 and 1996.
Robert Raley was accepted as an expert in bankruptcy. He testified that the principal increase in filings was related to individuals who are employed by local casinos, rather than customers of the casinos. Essentially, his findings were that a large number of casino employees who had been relegated to minimum wage jobs, were now experiencing financial problems because they had no background or ability to handle the higher credit limits made available to them because of their increased wages. Raley estimated that only one out of every 800 bankruptcies was related to an individual addicted to gambling.
Dr. Mark Vigen, a member of the ZBA and clinical psychologist testified that in his opinion the divorce rate had not increased and that there was no increase in family violence as a result of gaming.
The assistant director for Caddo Parish Public Works, Reginald Mims testified that there are three nearby facilities offering video poker machines and alcohol to its patrons, namely, the VFW hall, Bayou Club, and Hilltop Club and Grill. These establishments are located within two miles of the S & A Truck Stop and are located in an area zoned R-A.[7] After advising the lower court that no additional evidence would be forthcoming, the case was submitted on June 7, 1996.

DISCUSSION
Zoning is a general plan designed to foster improvement by confining certain classes of buildings and uses of property to certain localities. City of New Orleans v. Hamilton, 602 So.2d 112, 114 (La.App. 4 Cir.1992). The purpose of zoning is to reduce or eliminate the adverse effects that one type of land use might have on another.
Although Louisiana law now requires that zoning ordinances be adopted in accordance with a comprehensive plan[8], the first zoning ordinances in Louisiana were adopted in a "piecemeal" fashion. See Calvo v. City of New Orleans, 136 La. 480, 67 So. 338 (1915). After several ordinances were struck down by the courts, it became apparent that municipalities would need legislative authority in order to designate certain areas of the city to be used for residential purposes only. The Louisiana Legislature responded to this need by enacting Act 27 of 1918 which stated:
... the municipal authorities of cities of more than 50,000 inhabitants shall have authority by ordinance to define and regulate the kind, style and manner of construction of buildings and other edifices which may be erected on certain designated streets and thoroughfares, and to permit or prohibit the establishment and operation of business and trades within designated limits.
La. Act 27 of 1918, § 1 [Dart's Stats. (1939) § 5766]. This statute created the legal principle that it is within the police power of the municipality to regulate the use of property even if such use has not yet created a nuisance. The Louisiana Constitution of 1921 when adopted included the following provision in order to give this new expansion of municipal police power more force: "All municipalities are authorized to zone their territory, to create residential, commercial and industrial districts, and to prohibit the establishment of places of business in residential districts." La. Const. of 1921 art. 14, § 29.
One of the early cases contesting the validity of a zoning ordinance was Civello v. City of New Orleans, 154 La. 271, 97 So. 440 (La.1923). In Civello, petitioner applied for a permit to erect a business establishment. The City of New Orleans subsequently enacted an ordinance which forbade petitioner *416 from erecting his business. Petitioner claimed that the ordinance could not be enforced against him retroactively because he had an absolute right to the permit for which he applied. However, in light of the new legislative and constitutional provisions, this court was inclined to expressly overrule previous jurisprudence.[9] Our court determined that business establishments are likely to become a "genuine nuisance" in residential neighborhoods and that esthetic considerations are a matter of general welfare. The court noted it was within the city's police power to enact a zoning ordinance based on these considerations and while esthetic considerations alone do not justify the exercise of police power, but if the "primary consideration" for the enactment of a zoning ordinance is public health, comfort, safety, or general welfare, considerations of taste and beauty are also appropriate.
Relying on this same principle regarding consideration of public health, comfort, safety or general welfare when enacting zoning ordinances, in Palermo Land Co. we stated:
"It is not necessary, for the validity of the ordinance in question, that we should deem the ordinance justified by considerations of public health, safety, comfort or the general welfare. It is sufficient that the municipal council could reasonably have had such considerations in mind. If such considerations could have justified the ordinances, we must assume that they did justify them.
* * * * * *
It is not the province of the courts to take issue with the council. we have nothing to do with the question of the wisdom or good policy of municipal ordinances. If they are not satisfying to a majority of the citizens, their recourse is to the ballot-not the courts."[10]
Additionally, local governments are provided broad powers to adopt regulations for land use, zoning and historic preservation. At Article 6, § 17 of our Constitution of 1974 it provides:
§ 17. Land Use; Zoning; Historic Preservation
Section 17. Subject to uniform procedures established by law, a local governmental subdivision may (1) adopt regulations for land use, zoning, and historic preservation, which authority is declared to be a public purpose; (2) create commissions and districts to implement those regulations; (3) review decisions of any such commission; and (4) adopt standards for use, construction, demolition, and modification of areas and structures. Existing constitutional authority for historic preservation commissions is retained.
Louisiana's zoning enabling act, La. R.S. 33:4721 also confers upon local governments the authority to enact municipal zoning regulations. It states:
For the purpose of promoting health, safety, morals, or the general welfare of the community, the governing authority of all municipalities may regulate and restrict the height, number of stories, and size of structures, the percentage of lot that may be occupied, the size of yards, courts, and other open spaces, the density of population, and the location and use of the buildings, structures, and land for trade, industry, residence, or other purposes; provided that zoning ordinances enacted by the governing authority of municipalities or the acts of the zoning commission, board of adjustment as herein provided for, or zoning administrator shall be subject to judicial review on the grounds of abuse of discretion, unreasonable exercise of the police powers, an excessive use of the power herein granted, or the denial of the right of due process, provided, further, that the right of judicial review of a zoning ordinance shall not be limited by the foregoing.
In order to exercise these zoning powers, the municipality must appoint a zoning commission.[11] The function of the zoning commission *417 is to propose to the legislative body of the municipality, a set of recommendations concerning the boundaries of zones and the regulations and restrictions to be enforced therein. If a municipal planning commission exists, that commission automatically becomes the zoning commission.
Caddo Parish is one example of a municipality where the planning commission also serves as the zoning commission. When the planning commission serves these dual roles, it must hold separate meetings and keep separate records concerning its function as the zoning commission.[12] However, if the municipality does not have a planning commission, the municipality is free to compose the zoning commission as it sees fit.
Whatever its composition, the zoning commission must give notice to the public and hold public hearings on proposed recommendations before they can be transmitted to the legislative body of the municipality.[13] Once the legislative body receives the recommendations of the zoning commission, it must conduct a hearing on the proposed recommendations and give the public adequate notice of the hearing.[14] Interested parties must be given an opportunity to be heard at this hearing. After the hearing, the municipal legislative body may enact the zoning recommendations by a simple majority vote.
Any local government may draft, adopt, or amend a home rule charter. La. Const. Art. 6 § 5; La. R.S. 33:1395. Local governments operating under a home rule charter have exclusive control over the operation, management, and internal arrangement of the component parts of its local government. Lafourche Parish Council v. Austin, 94-0985 (La.12/9/94); 648 So.2d 343. Caddo Parish has adopted a home rule charter pursuant to Art. VI, § 5 of our constitution.[15] Therefore, Caddo Parish operates under a home rule charter and is authorized to exercise any power and perform any function necessary, requisite, or proper for the management of its local affairs.[16]
Caddo Parish has the authority, under its constitutionally authorized home rule charter, to enact and enforce zoning regulations. Pursuant to this authority, Caddo Parish has adopted its own zoning regulations which are codified at Chapter 51 of the Caddo Parish Code of Ordinances.
The Zoning Administrator is the official primarily responsible for the enforcement of zoning ordinances, zoning determinations, and interpretation of the zoning ordinances in Caddo Parish.[17] Any person aggrieved by the Zoning Administrator may appeal the decision to the Board of Appeals.[18] Subject to certain limitations, the Board of Appeals may reverse or affirm, in whole or in part, or modify the determination of the Zoning Administrator.[19] The Board of Appeals shall have all of the powers of the officer from whom the appeal is taken. Any person aggrieved by a decision of the Board of Appeals has ten (10) days to file a written request/appeal with the commission clerk for review by the Caddo Parish Commission. The Caddo Parish Commission shall either affirm, modify, remand or reverse the decision rendered by the Board of Appeals. Any person aggrieved by the decision of the Caddo Parish Commission has the right to appeal the decision to the district court.[20]
The zoning board has the power to grant "special use" permits. These permits allow a landowner to vary from the strict terms of a zoning ordinance.[21] The procedure for issuing special use permits must be *418 sufficiently definite to notify landowners of their right to request such a permit. Summerell v. Phillips, 282 So.2d 450 (La.1973). In addition, the standards for granting a special use permit must ensure equal treatment for all applicants to prevent the board of zoning appeals from exercising their power arbitrarily. For example, in Morton v. Jefferson Parish Council, 419 So.2d 431 (La. 1982), we invalidated an ordinance because it gave the parish "unbridled discretion" in deciding whether to grant or deny special use permits. Under this ordinance, the council could grant a special use permit when it was satisfied that doing so would not "seriously affect any adjoining property or the general welfare." Morton, 419 So.2d at 434. We held that the ordinance did not have sufficient standards in place to ensure the uniform application of the council's power to grant special use permits.
Our jurisprudence clearly states that zoning is a legislative function, the authority for which flows from the police power of governmental bodies. St. Charles Gaming Co., Inc. v. Riverboat Gaming, 94-2697 (La.1/17/95); 648 So.2d 1310; City of New Orleans v. Board of Commissioners, 93-0690 (La.7/5/94); 640 So.2d 237; Morton v. Jefferson Parish Council, 419 So.2d 431 (La.1982); Folsom Road Civic Association v. Parish of St. Tammany, 407 So.2d 1219 (La.1981); Four States Realty Co., Inc. v. City of Baton Rouge, 309 So.2d 659 (La.1974). Louisiana Const. Art. VI § 17 expressly grants the power to enact zoning regulations to all local governments. St. Charles Gaming Co., Inc., 648 So.2d at 1316.
Because zoning falls under the jurisdiction of the legislature, courts will not interfere with their prerogative unless their action is palpably erroneous and without any substantial relation to the public health, safety or general welfare. Four States Realty Co., Inc., 309 So.2d at 664. In Four States Realty Co., Inc., we stated:
`"The terms `arbitrary and capricious action' when used in a manner like the instant one, must mean willful and unreasoning action, absent consideration and in disregard of the facts and circumstances of the case. On the other hand, when there is room for two opinions, action is not arbitrary or capricious when exercised honestly and upon due consideration, even though it may be believed that an erroneous conclusion has been reached."'[22]
The test of whether a zoning board's action is arbitrary and capricious is whether the action is reasonable under the circumstances. Papa, 661 So.2d at 1103; (citing Clark v. City of Shreveport, 26,638 (La.App. 2 Cir. 5/10/95), 655 So.2d 617); Castle Investors v. Jefferson Parish Council, 472 So.2d 152 (La.App. 5th Cir.); writ denied 474 So.2d 1311 (La.1985). "A reviewing court does not consider whether the district court manifestly erred in its findings, but whether the zoning board acted arbitrarily, capriciously or with any calculated or prejudicial lack of discretion." Papa, 661 So.2d at 1103.
The Commission alleges that pursuant to Louisiana's Video Poker Devices Control Law, La. R.S. 27:301 et seq., it has the authority to regulate the placement of video poker devices. In order to accomplish this purpose, the Commission enacted Parish Ordinance No. 3093 of 1994. At Section 2 it states:
That Sec. 51-639, of Chapter 51 of the Code of Ordinances for Caddo Parish, Louisiana, as amended, the Parish Zoning Ordinance is hereby amended by adding the following use to the list of "Special Exception Uses" in the B-2, Neighborhood Business District:
"Gaming EstablishmentThe lawful operation of any gaming establishment exactly as such use existed on the effective date of this ordinance or any amendment thereto may be continued as a nonconforming use. If the nonconforming use is abandoned, discontinued or ceases to operate for a period of three (3) months, it shall not thereafter be re-established without full compliance with the Zoning Ordinance and other applicable codes."
*419 Article XII, § 6(B) of the constitution which mandates the legislature to define and suppress gambling, does not prevent a local government from exercising its constitutionally delegated home rule powers to adopt and enforce zoning ordinances that restrict gaming activity to certain reasonably designated zones within its jurisdiction. St. Charles Gaming Co., Inc., 648 So.2d at 1312. In the case sub judice, the state regulations which allow for licensure of video draw poker establishments do not prevent the Caddo Parish Commission from restricting this activity to certain zones by exercising its power to regulate zoning and land use.
A challenge to a zoning decision is a de novo proceeding in which the issue is whether the result of the legislation is arbitrary and capricious, and therefore the taking of property equates to a violation of due process. Palermo Land Co., 561 So.2d at 492, (citing Hernandez v. City of Lafayette, 399 So.2d 1179 (La.App. 3 Cir.1981); appeal dismissed 455 U.S. 901, 102 S.Ct. 1242, 71 L.Ed.2d 440 (1982)); Westside Lumber & Supply v. Parish of Jefferson, 357 So.2d 1384 (La.App. 4 Cir.1978). The property owner has the burden to establish by a preponderance of the evidence that the decision by the Commission to deny the variance has no substantial relationship to public health, safety, morals or general welfare of the municipality. Palermo Land Co., 561 So.2d at 493. In this case, the plaintiffs argue as did the plaintiffs in the Palermo decision, that the Commission's ruling does not have a rational basis, and was solely a reaction to public opposition.
In Four States Realty Co., Inc., we recognized that expressions of opinion made by citizens to a legislative body serve as a manner by which the legislative body learns the will of the people and determines what benefits the public good. Here, the facts clearly show that citizens residing within the affected areas of the S & A truck stop were vigorously opposed to the additional noise, traffic, and exposure of school-aged children generated by a video poker establishment. Regarding the Bayou Club, Hilltop Club and Grill and the VFW Hall, the trial court relied on the fact that these facilities offer video poker to its patrons in finding the Commission's action arbitrary and capricious. However, these establishments are not located within a B-2 zone, but within an area zoned R-A (residential/agricultural). Therefore the Commission could reasonably treat plaintiffs' property differently. The record showed that all three businesses are located outside the Metropolitan Planning Commission's five (5) mile planning jurisdiction for the parish, and none of them is a truck stop subject to La. R.S. 27:306 which regulates video draw poker devices at truck stops.
Where permits are granted in similar situations and refused in others, the refusal to grant a permit may constitute non-uniform application of zoning ordinance regulations. See Clark, 655 So.2d at 622. This case is entirely different from Clark where the property owner was able to show that another applicant received approval to operate a similar business in the same area, while the plaintiff was denied the variance. Caddo Parish maintains that it has never granted a variance to operate video poker in a B-2 zone. The plaintiffs had the burden to rebut this presumption, and failed to do so.
This case is res nova in the sense that we are called upon to decide what deference the Commission must give to a decision made by the ZBA. In other words, does the Commission "review" the ZBA's decision to determine whether it was arbitrary and capricious, or is the Commission free to accept or reject the recommendation made by the ZBA.
We conclude that the Commission, as the final decision making body, has not abandoned any of its legislative prerogative and decision making authority. The Commission receives the record from the ZBA, but is free, in addition, to hold hearings, and receive additional evidence and testimony. The Commission does not review the ZBA's decision to determine whether it was arbitrary and capricious, but instead makes an independent decision. Therefore, the trial court erred when it determined that the Commission was charged with "reviewing" the decision of the ZBA and that the decision of the ZBA carried with it a "prima facia *420 presumption of validity". Clearly, the wrong standard was applied.
Usually, a case reaches the trial court when the zoning board and the parish governing body agree to deny a zoning change or variance to a property owner. In this case, the ZBA voted in favor of the property owner, while the Commission by majority vote, decided to deny the special exception use. In reviewing a recommendation from the ZBA, the parish is not bound by the arbitrary and capricious standard. When exercising its legislative authority to zone and regulate land use, the local government body has the authority to confine legal gaming activities to reasonable and fair zones in accordance with the surrounding uses of property and comprehensive zoning ordinances in order to promote the public health, safety, morals and welfare of the community. St. Charles Gaming, 648 So.2d at 1317.

DECREE
For the reasons stated herein, we reverse the decisions rendered by the trial court and the court of appeal, and we reinstate the decision of the Caddo Parish Commission.
REVERSED.
KNOLL, Justice, concurring.
In my view the Commission is not bound to adopt a non-arbitrary ZBA decision to grant a zoning variance and thereby allow plaintiff to operate a gaming establishment at his truck stop.
The planning commission recommends, inter alia, ordinances to the city council and police jury. La.R.S. 33:140.37. The city council and police jury enact ordinances, including zoning ordinances. La.R.S. 33:140.29. Zoning ordinances "shall provide for a Board of Appeals" (La.R.S.33:140.32(A)) and "may provide for and specify general rules to govern the organization and procedure of such board of appeals." La.R.S. 33:140.32(B). The board of appeals (designated in the opinion as ZBA) "shall" have enumerated powers including the power
[t]o hear and decide, in accordance with the provisions of any such ordinance, request for special exceptions or for interpretations of the map or for decisions upon other special questions upon which such board is authorized by any such ordinance to pass.
La.R.S. 33:140.32(E)(2). (Emphasis added.) Reading the statutory provisions in conjunction with each other, it appears that the ZBA would have the power to decide exceptions, or variances when the ordinances permit.
Local Ord. No. 798, § II, A, 5,2-13-58, or Sec. 51-130, provides:
Except as hereinafter provided:
(1) No land shall be used or occupied, no structure shall be erected, altered, used or occupied, and no use shall be operated unless in conformity with the regulations herein prescribed for the district in which such structure or land is located.
The only ordinance exception relating to gaming provided for continuing non-abandoned lawful gaming operations pursuant to Caddo Parish Ordinance No. 309, Section 2. ZBA's decision to grant a variance not in conformity with local ordinances is not entitled to deference by the Commission, when the Commission is charged with
guiding and accomplishing a coordinated, adjusted, and harmonious development of the metropolitan planning area which will, in accordance with existing and future needs, best promote public health, safety, morals, order, convenience, prosperity, or the general welfare, as well as efficiency and economy in the process of development.
La.R.S. 33:140.11. (Emphasis added.) If the Commission's hands are tied with respect to decisions made by the ZBA, then its statutory mission to accomplish coordinated development could not be achieved.
The Commission made its decision to reverse the ZBA based on accomplishing a harmonious development of the area pursuant to La.R.S. 33:140.1 et seq.[1] Commissioner Gillen, speaking on behalf of the Commission *421 as a whole, specified that the decision to overturn the ZBA's decision was based on land use. He noted that the establishment's presence would not be compatible with the surrounding area, noting the proximity to four churches and two schools. Therefore, the Commission is not bound to affirm the ZBA decision; its review may be independent, based on its statutory authority.
NOTES
[*] Marcus, J., not on panel. See Rule IV, Part 2, § 3.
[1] The record shows that the transcript from the zoning board's hearing as well as other documents listed the property in question as 12300 Mansfield Road. However, both the petition and the trial court's opinion listed the property as 12310 Mansfield Road.
[2] Miciotto testified that Carl King donated 925 feet of his property to Caddo Parish in order to complete the road refurbishing project.
[3] Spot zoning is defined as the singling out of a small parcel of land for a classification that differs from that of the surrounding area. Palermo Land Co. v. Planning Com'n, 561 So.2d 482 (La. 1990).
[4] The record shows that the District Representative, Donald Aytch was absent.
[5] She testified that "spot zoning" usually refers to a commercial development being introduced into a large residentially zoned area, but it can be any different category being introduced to a larger category.
[6] According to their guidelines, a B-2 zone is defined as a neighborhood business district.
[7] This zoning designation describes an area classified as residential/agricultural.
[8] La.Rev.Stat. Ann. § 33: 4723
[9] See Calvo v. City of New Orleans, 136 La. 480, 67 So. 338 (1915); and Blaise v. City of New Orleans, 142 La. 73, 76 So. 244 (1917).
[10] See Palermo Land Co. v. Planning Com'n, 561 So.2d 482, 491 (La.1990), rehearing denied (citing Civello, 97 So. at 444).
[11] La. R.S. 33:4726.
[12] La. R.S. 33:106.
[13] La. R.S. 33:4726.
[14] La. R.S. 33:4724.
[15] Caddo Parish, La.Code of Ordinances, Charter Art. I § 1-01Art. IX § 9-13.
[16] Caddo Parish, La.Code of Ordinances, Charter Art. II § 2-01.
[17] Caddo Parish, La.Code of Ordinances § 51-1.
[18] Caddo Parish, La.Code of Ordinances § 51-19.
[19] Caddo Parish, La.Code of Ordinances § 51-46(f).
[20] Caddo Parish, La.Code of Ordinances § 51-49.
[21] La. R.S. 33:4727(C)(3)(c).
[22] See Four States Realty Co., Inc., 309 So.2d at 666, citing Rathkopf, The Law of Zoning and Planning, 3rd ed.1974, Cumulative Supp. Vol. 1, pages 2-26.
[1] The statutory scheme of La.R.S. 33:140.1 et seq. (Shreveport Metropolitan Planning) was to plan and effectuate a master design that would lead to a unified development and provide standards. La.R.S. 33:140.1.