407 So.2d 1219 (1981)
FOLSOM ROAD CIVIC ASSOCIATION
v.
PARISH OF ST. TAMMANY Through St. Tammany Parish Police Jury.
No. 81-CA-1901.
Supreme Court of Louisiana.
December 14, 1981.
*1220 M. J. LeGardeur, Jr., Covington, Delbert G. Talley, New Orleans, for plaintiff-appellee.
Edward A. Shamis Jr. of Shamis & McCreary, Ltd., Slidell, for defendant-appellant.
BLANCHE, Justice.
This case involves the constitutionality of the St. Tammany Parish zoning ordinance. The statutory authorization for zoning in St. Tammany Parish is contained in Act 518 of 1954.[1] This enabling legislation empowered the Parish of St. Tammany to regulate and restrict the development of property within the parish "for the purpose of promoting *1221 health, safety, morals, or the general welfare of the community." Further, Act 518 permitted the local legislative body to divide the parish into districts "as may be deemed best suited to carry out the purposes of this act." Regulations adopted by the parish were required to be uniform within each district and had to be made "in accordance with a comprehensive plan."
Pursuant to the enabling legislation, the Parish of St. Tammany sought to zone the territory within its borders. Accordingly, in 1971, the Parish Police Jury, following the recommendation of the Parish Planning Commission, passed Ordinance 523. This regulation divided the parish into land use districts and was designed to lessen congestion, prevent overcrowding, secure safety and insure that adequate public services were available to the population. The Folsom Road Civic Association challenged the constitutionality of Section 2.1 of this ordinance, claiming it to be arbitrary and discriminatory. The disputed section, which created the R-Rural zone reads as follows:
"Section 2.1. R-Rural District.
2.101. Permitted Uses.
1. Any use which does not create a nuisance by way of objectionable noise, glare, odor, or air pollution. Junk Yards and garbage disposal dumps will be permitted only where authorized by the St. Tammany Parish Police Jury. All regulations of the Stream Control Commission of Louisiana and the Louisiana State Board of Health as regards environmental pollution are to be complied with.
2. Commercial and industrial uses falling in the above categories require review and approval by the Planning Commission before issuance of a permit. Applicants for such permits must submit to the Planning Commission plans meeting the following criteria.
a. Use does not create a hazard to health and safety of the adjacent residents.
b. Noise, glare and unsightliness when present are screened by solid fences or walls six feet high or plantings which will grow to this minimum height.
c. Minimum Yard Requirements (As per Ordinance No. 769)

Front Yard: Front building lines shall conform to the average building lines established in a developed block; in all cases, this front building line shall be setback a minimum of fifty feet (50') from the street line.

Side Yard: There shall be two side yards, one on either side of the principal building, each having a minimum width of ten feet (10').

Rear Yard: There shall be a rear yard having a depth of not less than twenty percent (20%) of the depth of the lot, or not less than fifty feet (50') when the lot depth is in excess of 250 feet.
d. Roadway exists (sp.) and entrances are located for clear sight distance and safe access to public roadways.
e. Major drainage channels are designed with sufficient culverts and rights of way to provide for natural water flow and maintenance of drainage.
f. Disposal of waste and sewerage has been approved by the proper local authorities.
g. There be no more than one permit and one use requested for a building to be constructed on a lot or lots of record.
h. Meets the requirements of the subdivision ordinance.
2.102. Height Regulations: None except when abutting residential areas. Then set back one foot for each foot of height over 45 feet.
2.104. Parking: Applicable to commercial and industrial uses only.See Part 4.
*1222 2.105. Loading zone required for commercial and industrial usesSee Part 4.
2.106. Section 3.3 through 3.303 will apply only to commercial or industrial uses indicated above.
The district court struck down the zoning ordinance, finding Section 2.1 arbitrary and inconsistent with constitutional and legislative guidelines. Because the ordinance was declared unconstitutional, this case comes before us on an appeal of right. Louisiana Constitution, Art. 5, § 5(D)(1).
The Parish Police Jury argues that Ordinance 523 complies with constitutional and legislative requirements and that it does not deny equal protection or due process of law.
The authority to enact zoning regulations flows from the police power of governmental bodies and is valid if it bears a rational relation to the health, safety and welfare of the public. Four States Realty v. City of Baton Rouge, 309 So.2d 659 (La. 1975). Zoning ordinances are presumed to be valid and whoever attacks the constitutionality of an ordinance must show an abuse of discretion or an excessive use of power. Four States Realty, supra.
Ordinance 523 created six land use districts in St. Tammany Parish. Over ninety percent of the zoned land is classified R-Rural, and such classification permits all land uses that do not create a nuisance "by way of objectionable noise, glare, odor or air pollution". The district court concluded that the failure to create distinct districts to segregate commercial, agricultural, industrial and residential endeavors was contrary to constitutional and legislative requirements. Further, the lower court found the ordinance clearly incompatible with enabling legislation because it failed to establish a comprehensive plan.
Our review of the zoning ordinance, in light of the enabling act and constitutional provisions leads us to conclude that the regulation, including Section 2.1, is a reasonable exercise of the police power. We are also of the opinion that the parish did comply with all requisites regarding the creation of districts and a comprehensive plan.
The zoning regulation adopted by the Parish Police Jury was based on land uses and the extent of development within the parish. Because most of the land covered by the R-Rural district was undeveloped, it would have been irrational to segregate the parish into large commercial, industrial and residential zones. The R-Rural district was the most reasonable means of insuring the orderly transition from no zoning to a situation where distinct areas could be identified and properly zoned by the legislative body. The zoning scheme insured that adequate services, such as utilities, sewerage, and fire protection, were available to the citizens of St. Tammany and saved the parish the cost of providing these services to isolated districts.
The enabling legislation, Act 518 of 1954, states that zoning regulations "shall be made in accordance with a comprehensive plan". A comprehensive zoning plan promotes the ends of the enabling legislation. It is a general plan to control the use and development of properties in the community. Baker v. Milwaukie, 271 Or. 500, 533 P.2d 772 (1975). Though Act 518 does require zoning regulations to be in accordance with a comprehensive plan, it does not require that a single ordinance constitute the comprehensive plan. Concerning this, the record shows that the Parish Police Jury retained experts to prepare and present a comprehensive land use plan prior to the enactment of Ordinance 523. This plan obtained the approval of the Parish Planning Commission. Thus, we conclude that the zoning regulations, adopted by the parish recognized St. Tammany's need for flexibility and were passed with aforethought to a plan rather than adopted in some chaotic fashion. See Bernard v. City of Bedford, 593 S.W.2d 809 (Tex.Civ.App.1980).
*1223 We are also of the opinion that neither the constitution nor the enabling legislation limits the parish's authority to create districts which are solely commercial, industrial, agricultural or residential in nature. Act 518 provides that the "local legislative body may divide the said parish into districts... as may be deemed best suited to carrying out the purposes of this act." Such language is clearly permissive and allows the establishment of any district if it furthers the purpose of the act.
Further, the St. Tammany Parish ordinance is not contrary to the grant of authority contained in the Louisiana Constitution. The trial court was of the opinion that Ordinance 523 was subject to the mandate of Article 14, § 29(e) of the Louisiana Constitution of 1921, which stated:
"The Parish of St. Tammany is authorized to zone its territory; to create residential, agricultural, commercial and industrial districts, and to protect such districts by regulating the intrusion of incompatible land uses. The provisions of this paragraph shall be self-operative."
Relying on this constitutional provision, the district court concluded that:
"The Constitution of the State of Louisiana has authorized the legislative body of the parish to zone its territory into residential, agricultural, commercial, and industrial districts, and to protect against the intrusion of incompatible land uses. The R-Rural district is neither residential, agricultural, commercial, or industrial."
The Parish contends that this conclusion was improper under the Louisiana Constitution of 1921, and that the trial court failed to recognize that this provision was repealed by the Louisiana Constitution of 1974. Concerning this, Article 14, § 17 of our 1974 Constitution provides:
"Except to the extent provided in this Article and except as retained in Articles I through XIII of this constitution, the provisions of the Constitution of 1921 are repealed."
Further, Article 14, § 16 of the 1974 Constitution specifies those provisions of the 1921 constitution which were made part of our statutory law. Section 16(A), which lists those parts of Article 14 of the 1921 constitution which were retained, fails to list § 29. The parish claims that the constitutional requirements relative to zoning within the state are now contained in Article 6, § 17 of the 1974 Constitution. This section states:
"Subject to uniform procedures established by law, a local governmental subdivision may (1) adopt regulations for land use, zoning, and historic preservation, which authority is declared to be a public purpose; (2) create commissions and districts to implement those regulations; (3) review decisions of any such commission; and (4) adopt standards for use, construction, demolition, and modification of areas and structures. Existing constitutional authority for historic preservation commissions is retained."
We agree with St. Tammany's position that this provision is expressed in permissive language, and does not require that all the property within the parish fall within certain predetermined categories as concluded by the trial court. However, Article 14, § 18(A) of the 1974 Constitution provides:
"Laws in force on the effective date of this constitution, which were constitutional when enacted and are not in conflict with this constitution, shall remain in effect until altered or repealed or until they expire by their own limitation." (emphasis added)
Thus, though Ordinance 523 is not in conflict with our present constitution, we must still determine if the zoning regulation was constitutional when enacted. Concerning this, it is apparent that Article 14 of the 1921 Constitution does authorize the creation of specified districts. We are of the opinion that this constitutional grant of authority does not prohibit the establishment of other types of districts best suited to the needs of the local population. Because the *1224 greater portion of the parish was not developed when Ordinance 523 was enacted, the large R-Rural zone meets the test of rationality, furthers the purpose of the enabling legislation and does not promote incompatible land use within the district.
The district court also found the guidelines controlling the issuance of permits for industrial and commercial uses to be violative of equal protection and due process of law. This conclusion was based on a lack of objective criteria, which left approval of permit issuance to the discretion of the Planning Commission or its individual members. Relying on the language of Summerell v. Phillips, 282 So.2d 450 (La. 1973), the lower court stated:
"A zoning ordinance which contains no standard for the uniform exercise of the power to grant or deny applications for permits is unconstitutional. To be constitutional, a zoning ordinance must be sufficiently definite to notify citizens of their rights pursuant to the ordinance and must establish sufficiently definite and adequate standards to govern officials with respect to the uniform treatment of applications for permits under the ordinance."
A reading of the ordinance reveals that it contains numerous and extensive objective criteria. These include restrictions on health and safety hazards, drainage channels, height regulations, minimum yard requirements and compliance with subdivision ordinances.
Further, the Planning Commission does not have unbridled discretion to control the development of the parish by granting or denying permits. Ordinance 523 does mandate that proposed commercial and industrial uses be "reviewed and approved" by the Planning Commission before the Department of Engineering can issue a permit.[2] Thus, the function of the Planning Commission is to insure that the specific requirements of Section 2.1 are met. Because the issuance of permits is an administrative function, a permit must issue as a matter of law once the listed requirements are satisfied. Consequently, all property located in the same district is entitled to the same rights and subject to the same restrictions.
The failure of the Planning Commission to recommend the issuance of a permit when the enumerated criteria are met or an attempt by an individual commission member to issue a permit ought to give rise to a mandamus action, and not the conclusion that the ordinance denies equal protection or due process of law. Thus, we conclude that Ordinance 523 is a legitimate means of promoting the health, safety and welfare of the citizens of the Parish of St. Tammany.
Accordingly, the judgment of the district court is reversed and judgment is rendered in favor of appellants.
REVERSED.
NOTES
[1] The pertinent provisions of Act 518 of 1954 provide:

"Section 1. Be it enacted by the Legislature of Louisiana. That for the purpose of promoting health, safety, morals, or the general welfare of the community, the legislative body of St. Tammany Parish is hereby empowered to regulate and restrict the heights, number of stories, and size of buildings and other structures, the percentage of lot that may be occupied, the size of yards, courts, and other open spaces, the density of population, and the location and use of the buildings, structures and land for trade, industry, residence or other purposes.
Section 2. For any or all of said purposes the local legislative body may divide the said Parish into districts of such number, shape, and area as may be deemed best suited to carry out the purposes of this act; and within such districts, it may regulate and restrict the erection, construction, alteration or use of buildings, structures or land. All such regulations shall be uniform for each class or kind of buildings throughout each district, but the regulations of one district may differ from those in other districts.
Section 3. Such regulations shall be made in accordance with a comprehensive plan and design to lessen congestion in the public streets; to secure safety from fire; to promote health and the general welfare; to provide adequate light and air; to avoid undue concentration of population; to facilitate adequate transportation, water supply, sewerage, schools, parks, and other public requirements. Such regulations shall be made with reasonable consideration, among other things to the character of the district and its peculiar suitability for particular uses, and with a view to conserving the values of buildings and encouraging the most appropriate use of land throughout such municipality."
[2] Section 2.106 of Ordinance 523 states that Sections 3.3 through 3.303 will apply only to commercial or industrial uses which create a nuisance. Section 3.3 provides:

"Building Permits RequiredNo building or other structure in any district other than R-Rural Districts shall be erected, moved, added to, or structurally altered without a permit therefor, issued by the St. Tammany Parish Department of Engineering. No building permit shall be issued except in conformity with the provisions of this ordinance except after written order from the Board of Adjustment. The lot and location of the building thereon shall be staked out on the ground and approved by the St. Tammany Parish Department of Engineering before any construction begins.