859 So.2d 57 (2003)
AZALEA LAKES PARTNERSHIP and Oak Harbor Investment Properties, L.L.C.
v.
PARISH OF ST. TAMMANY.
No. 2002 CA 0050.
Court of Appeal of Louisiana, First Circuit.
July 2, 2003.
Writ Denied November 14, 2003.
William J. Jones, Jr., Jones Fussell, L.L.P., Covington, for Plaintiffs-Appellees Azalea Lakes Partnership and Oak Harbor Investment Properties, L.L.C.
Walter P. Reed, Neil C. Hall, III, Office of District Attorney, Covington, for Defendant-Appellee Parish of St. Tammany.
*58 Clement F. Perschall, Jr., Metairie, for Intervenor-Appellant Eden Isles Home-owners Association, Inc.
Before: PARRO, McDONALD, and JAMES,[1] JJ.
PARRO, J.
An intervenor, Eden Isles Homeowners Association, Inc. (Eden), appeals a trial court judgment that sustained exceptions raising the objection of no cause of action and granted motions for summary judgment filed by the parties to the main demand, resulting in the dismissal of its intervention.[2] For the following reasons, the judgment is affirmed.

Factual Background and Procedural History
Azalea Lakes Partnership (Azalea Lakes) and Oak Harbor Investment Properties, L.L.C. (Oak Harbor) sued the Parish of St. Tammany (St. Tammany Parish), alleging breach of a development agreement (the agreement) entered into by the three parties on September 21, 1995. The purpose of the agreement was to develop certain property within a planned unit development (PUD), the Oak Harbor PUD, that had been created in 1988, pursuant to the authority of Ordinance 523, passed by St. Tammany Parish in 1971. In their petition, Azalea Lakes and Oak Harbor sought to have the agreement declared null and void and asked for damages and the refund of impact fees paid under the agreement. St. Tammany Parish answered, denying that the agreement was a nullity. In an amended and restated petition, Azalea Lakes and Oak Harbor sought specific performance of the agreement, a declaratory judgment concerning their rights under the agreement, and an injunction to prevent any violation of those rights.[3] Azalea Lakes and Oak Harbor also requested damages for prior breaches of the agreement by St. Tammany Parish in connection with the approval or permit process, as well as attorney fees.[4]
Eden intervened in the lawsuit,[5] challenging the validity of the agreement. Eden alleged that the creation of the Oak Harbor PUD was ultimately based on zoning authority granted to St. Tammany Parish by 1954 La. Acts, No. 518 (Act 518), which Eden argued was unconstitutional. Eden filed a motion for summary judgment and an exception raising the objection of no cause of action, which were opposed by the parties to the main demand. Subsequently, Azalea Lakes, Oak Harbor, and St. Tammany Parish filed exceptions raising the objection of no *59 cause of action and motions for summary judgment relative to Eden's intervention. Azalea Lakes', Oak Harbor's, and St. Tammany Parish's exceptions were sustained and their motions for summary judgment were granted, resulting in the dismissal of Eden's intervention.[6] Eden appeals.

Constitutionality of Ordinance 523
Eden assigns as error the trial court's finding that Ordinance 523 was constitutional. Eden contends Ordinance 523 was dependent on Act 518,[7] which it claims was unconstitutional, because it was a local and special law that was not advertised as required by Article XIV, Section 29 of the Louisiana Constitution of 1921.
In 1971, St. Tammany Parish sought to zone the territory within its borders with the passage of Ordinance 523.[8] This ordinance divided the parish into six types of land use districts in a comprehensive plan designed to lessen congestion in the streets, prevent overcrowding of the land, secure safety from fire, and ensure that adequate public services were available to the population. Along with its amendments, Ordinance 523 is the zoning ordinance under which the Oak Harbor PUD was created. The Oak Harbor PUD, consisting of 1,219.69 acres, was created on May 19, 1988, as an amendment to the then-existing Eden Isles PUD. There are 27 specifically numbered or lettered parcels of land in the Oak Harbor PUD. Each has a designated land use, such as residentialsingle family or multi-family; commercial; multi-usechurch, school, elderly housing, medical clinic, hospital, fire station, recreation, or other institutional uses; or open spacegolf course, tennis, swimming, parkway, or water. Each residential parcel has a specific density (number of dwelling units per acre) that cannot be exceeded.
*60 As noted by the trial court, the constitutionality of Ordinance 523 was addressed and answered by the supreme court in Folsom Road Civic Ass'n v. St. Tammany Parish, 407 So.2d 1219, 1222 (La.1981).[9] After reviewing the applicable constitutional provisions, the supreme court concluded that Ordinance 523 was a reasonable exercise of the police power and was not unconstitutional. Folsom, 407 So.2d at 1222. In particular, the court addressed whether Ordinance 523 was contrary to the grant of authority relative to zoning contained in the Louisiana Constitution of 1974, as well as the prior constitution of 1921, as amended in 1962.
Under the 1974 constitution, the constitutional requirements relative to zoning within the state are in Article VI, § 17, which provides:
Subject to uniform procedures established by law, a local governmental subdivision may (1) adopt regulations for land use, zoning, and historic preservation, which authority is declared to be a public purpose; (2) create commissions and districts to implement those regulations; (3) review decisions of any such commission; and (4) adopt standards for use, construction, demolition, and modification of areas and structures. Existing constitutional authority for historic preservation commissions is retained.
The court in Folsom determined that Ordinance 523 was not in conflict with Article VI, § 17 of the 1974 constitution, in that the constitutional provision authorizes local governmental subdivisions to enact zoning laws. Folsom, 407 So.2d at 1223. The court then addressed whether Ordinance 523, which was enacted in 1971, had survived the adoption of the 1974 constitution. For this to occur, St. Tammany Parish must have been acting within its constitutionally afforded authority at the time of the enactment of Ordinance 523.[10]See LSA-Const. art. XIV, § 18(A);[11]Folsom, 407 So.2d at 1223.
Prior to the adoption of the 1974 constitution, zoning ordinances were governed by Article XIV, § 29 of the Louisiana Constitution of 1921, which, in pertinent part, provided: "All municipalities are authorized to zone their territory; to create residential, commercial and industrial districts, and to prohibit the establishment of places of business in residential districts." The supreme court in Plebst v. Barnwell Drilling Co., 243 La. 874, 148 So.2d 584 (1963), concluded that neither this constitutional provision nor subsequent special constitutional amendments operated as a tacit restriction or limitation on the legislative power to delegate zoning authority to other public subdivisions. Plebst, 148 So.2d at 591.
Of more significance for our case, and as emphasized by the trial court, the legislature authorized an amendment to Article XIV, § 29 in 1962 to add a paragraph stating it was within the police power of *61 St. Tammany Parish to adopt zoning ordinances. See 1962 La. Acts, No. 519. Thereafter, St. Tammany Parish's authority to zone was expressly set forth in Article XIV, § 29(e), as follows:
The Parish of St. Tammany is authorized to zone its territory; to create residential, agricultural, commercial and industrial districts, and to protect such districts by regulating the intrusion of incompatible land uses. The provisions of this paragraph shall be self-operative.
Clearly, at the time of the adoption of Ordinance 523 in 1971, St. Tammany had express constitutional authority to enact regulations relative to zoning.[12] This authority was self-operative and independent of Act 518. Therefore, the question of whether Act 518 was or was not constitutional is irrelevant to the resolution of this case.
Nonetheless, Eden urges that the 1921 constitution, as amended, did not authorize the creation of a PUD. Thus, in this respect, Eden argues that Ordinance 523 is in conflict with former Article XIV, § 29(e). The supreme court in Folsom held that although the language of this constitutional provision, as amended, authorized only the creation of residential, agricultural, commercial, and industrial districts, this grant of authority for the enumerated types of districts did not prohibit the establishment of other types of districts (in that case, rural districts) best suited to the needs of the local population. Folsom, 407 So.2d at 1223. We believe the Folsom rationale can also be applied to the issue of whether creation of a PUD was authorized, as an "other type of district" best suited to the needs of the population.
The preamble to Ordinance 523 recites that the planning commission followed a comprehensive plan and gave reasonable consideration to the character of the six districts and their suitability for particular uses, with a view to conserving the value of buildings and encouraging the most appropriate use of the land throughout the parish. St. Tammany Parish's creation of a planned unit zoning district was made pursuant to a determination that such a district was best suited to the needs of St. Tammany Parish. Ordinance 523 anticipated that a PUD would contain a mixture of the individual uses permitted by the ordinance. The Oak Harbor PUD does just that. Accordingly, we conclude that the Oak Harbor PUD qualified as an "other type of district" that is best suited to the needs of the population. Based on our review of the record in this case, we further conclude the trial court did not err in its factual findings or in its application of the law when it determined that Ordinance 523 fell within the purview of former Article XIV, § 29(e) and that the Oak Harbor PUD was constitutionally established pursuant to that ordinance.

Constitutionality of Louisiana Revised Statute 33:4780.21, et seq.
In its third assignment of error, Eden questions whether the provisions of LSA-R.S. 33:4780.21, et seq. concerning the agreement are an unconstitutional delegation of legislative authority and whether the agreement itself is in violation of the statutes.[13] Azalea Lakes, Oak Harbor, *62 and St. Tammany Parish objected to Eden's third assignment of error to the extent that the second portion of the argument exceeded the allegations of Eden's intervention and its assertions at trial.
A final judgment shall grant relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings and the latter contains no prayer for general and equitable relief. See LSA-C.C.P. art. 862. Nevertheless, Article 862 does not confer jurisdiction on a trial court to decide issues that the litigants have not raised. The court may only grant relief warranted by the arguments contained in the pleadings and the evidence. Wilson v. Wilson, 30,445 (La.App. 2nd Cir.4/09/98), 714 So.2d 35, 43. Due process requires adequate notice to the parties of the matters that will be adjudicated. Glover v. Medical Center of Baton Rouge, 97-1710 (La.App. 1st Cir.6/29/98), 713 So.2d 1261, 1262. The question of whether the statutory provisions regarding development agreements were fulfilled with respect to the agreement and PUD at issue in this case was not raised in Eden's intervention and was not litigated in the trial court. Accordingly, Eden's argument pertaining to statutory compliance is not considered. See Tichenor v. Roman Catholic Church of Archdiocese of New Orleans, 95-0930 (La. App. 4th Cir.12/14/95), 665 So.2d 1307, 1312, writ denied, 96-0183 (La.3/15/96), 669 So.2d 424. We will limit our discussion of Eden's third assignment of error to the constitutionality of LSA-R.S. 33:4780.21, et seq.
Eden's argument to this court is that LSA-R.S. 33:4780.21, et seq., concerning development agreements, constitutes an unconstitutional delegation of legislative authority to private persons, i.e., developers. A state may not surrender, abdicate, or abridge its police power. Nonetheless, the police power of the state may be delegated to municipalities and other governmental subdivisions, because these entities are part of the total government of the state. City of Baton Rouge v. Williams, 95-0308 (La.10/16/95), 661 So.2d 445, 449. Louisiana Revised Statute 33:4780.22[14] declares that a parish may enter into a development agreement with any person having a legal or equitable interest in real property for the development of such property. The legislature recognized that development agreements can be used to avoid the waste of resources, hinder the escalating cost of housing, strengthen the public planning process, encourage private participation in comprehensive planning, and reduce the economic costs of development. See LSA-R.S. 33:4780.21. Relative to development agreements, LSA-R.S. 33:4780.22 through 4780.33 set forth, among other things, procedures, contents, enforcement, rules, regulations, official policies, public hearing requirements, notice requirements, approval by ordinance, amendments, modifications, terminations, cancellations, and recordation. Nothing in this statutory scheme attempts to delegate to the developer the right to rezone. To the contrary, LSA-R.S. 33:4780.27 provides:

*63 Unless otherwise provided by the development agreement, the rules, regulations, and official policies governing permitted uses of the land, governing density, and governing design, improvement, and construction standards and specifications applicable to development of the property subject to a development agreement shall be those rules, regulations, and official policies in force at the time of execution of the agreement. A development agreement shall not prevent a municipality or parish, in subsequent actions applicable to the property, from applying new rules, regulations, and policies which do not conflict with those rules, regulations, and policies applicable to the property as set forth herein, nor shall a development agreement prevent a municipality or parish from denying or conditionally approving any subsequent development project application on the basis of such existing or new rules, regulations, and policies.
Moreover, LSA-R.S. 33:4780.33 provides that nothing in the Subpart pertaining to development agreements shall be construed to authorize property use contrary to existing zoning classifications or to authorize the reclassification of such zones. Therefore, we conclude that Eden's argument relative to the constitutionality of these statutes lacks merit.

Decree
For the foregoing reasons, the judgment of the trial court dismissing Eden Isles Homeowners Association, Inc. is affirmed. All costs of this appeal are assessed to Eden Isles Homeowners Association, Inc.
AFFIRMED.
NOTES
[1] Judge A. Clayton James, retired from the Twenty-Second Judicial District Court, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] The trial court declared that the judgment of dismissal based on the motions for summary judgment was a final judgment. See LSA-C.C.P. art.1915.
[3] Made additional defendants were the St. Tammany Parish Zoning Commission, the St. Tammany Parish Planning Commission, and the St. Tammany Parish Council that replaced the St. Tammany Parish Police Jury. We will refer to this group of defendants as St. Tammany Parish.
[4] In this amended and restated petition, Azalea Lakes and Oak Harbor no longer sought to have the agreement declared a nullity and no longer sought the refund of the impact fees.
[5] Save St. Tammany, Inc. was also a party to the intervention filed by Eden; however, it subsequently obtained an order of voluntary dismissal, leaving Eden as the sole intervenor. Eden's members are property owners in Eden Isle, which is in the original tract of which the Oak Harbor PUD is a part.
[6] The judgment also disposed of a motion for partial summary judgment and other exceptions filed by St. Tammany Parish relative to the main demand. These rulings are not before this court on this appeal.
[7] The pertinent provisions of Act 518 stated:

Section 1. Be it enacted by the Legislature of Louisiana, That for the purpose of promoting health, safety, morals, or the general welfare of the community, the legislative body of St. Tammany Parish is hereby empowered to regulate and restrict the heights, number of stories, and size of buildings and other structures, the percentage of lot that may be occupied, the size of yards, courts, and other open spaces, the density of population, and the location and use of the buildings, structures and land for trade, industry, residence or other purposes.
Section 2. For any or all of said purposes the local legislative body may divide the said Parish into districts of such number, shape, and area as may be deemed best suited to carry out the purposes of this act; and within such districts it may regulate and restrict the erection, construction, alteration or use of buildings, structures or land. All such regulations shall be uniform for each class or kind of buildings throughout each district, but the regulations of one district may differ from those in other districts.
Section 3. Such regulations shall be made in accordance with a comprehensive plan and design to lessen congestion in the public streets; to secure safety from fire; to promote health and the general welfare; to provide adequate light and air; to avoid undue concentration of population; to facilitate adequate transportation, water supply, sewerage, schools, parks, and other public requirements. Such regulations shall be made with reasonable consideration, among other things to the character of the district and its peculiar suitability for particular uses, and with a view to conserving the values of buildings and encouraging the most appropriate use of land throughout such municipality.
[8] Ordinance 523, titled "St. Tammany Parish Land Use Ordinance," has been amended many times to keep up with population increases and development within the parish.
[9] However, Eden correctly asserts that although the court discussed Act 518 in reaching its decision, the constitutionality of Act 518 was not an issue before the court in Folsom.
[10] A law or an ordinance that is unconstitutional at the time of its enactment is not validated by a subsequent constitutional amendment that does not expressly ratify and confirm that law, but merely authorizes the enactment of such a law or ordinance. See Dennis v. The Finish Line, Inc., 99-1413, 99-1414 (La.App. 1st Cir.12/22/00), 781 So.2d 12, 29, writ denied, 01-0214 (La.3/16/01), 787 So.2d 319.
[11] Laws in force on the effective date of this constitution, which were constitutional when enacted and are not in conflict with this constitution, shall remain in effect until altered or repealed or until they expire by their own limitation. LSA-Const. art. XIV, § 18(A).
[12] Notably, Ordinance 523 simply recognized that all requirements of Act 518 with regard to the preparation of the report of the planning commission and the subsequent action of the policy jury had been satisfied. This reference to Act 518 does not make Ordinance 523 dependent upon it, as Eden contends. We conclude further that Ordinance 523 was not invalid simply because it did not reference Article XIV, § 29(e) or any other constitutional provision as supporting authority for its adoption.
[13] In its petition to intervene, Eden alleged, in pertinent part:

[T]he Development Agreement, if enacted pursuant to the provisions of La. R.S. 33:4780.21, then in such event same is unconstitutional. The aforesaid statute attempts to delegate to a developer the right to rezone and/or make other changes regarding building heights, characteristics, etc., and/or control population density within the area outlined in the development agreement. Section 17 of Article 6 of the Louisiana Constitution [of 1974] specifically reflects that zoning laws are for a public purpose, therefore, this is strictly a legislative function which is non-delegable.
[14] The effective date of this statute predated the agreement.