WEIMER, J.,
concurring in the result.
| iBased on the narrow facts of this case and on the particular interests asserted by the property owner/landlord, facts and interests to which the court is tethered by the doctrine of standing, I concur in the result reached by the majority. However, I write separately to express my concerns about the continued constitutional validity, in a different factual scenario, of the ordinance’s definition of “family” for zoning purposes, based solely on certain enumerated biological or legal relationships. In deciding a case, we are limited to the facts immediately before us, but in evaluating a case, we must also consider the impact of our decision on other factual situations. After performing the evaluation, I have certain concerns.
The authority to enact zoning ordinances flows from the police power of governmental bodies. As a general rule, an ordinance is valid if it bears a rational | -.relationship to the health, safety and welfare of the public. Folsom Road Civic Ass’n v. Parish of St Tammany, 407 So.2d 1219, 1222 (La.1981); Four States Realty v. City of Baton Rouge, 309 So.2d 659, 672 (La.1975) (on rehg). While the zoning power, thus defined, is broad, it is not unlimited. As this court has cautioned, “the exercise of a police power in zoning cannot be made without substantial relation to the health, safety and general welfare of the public;” neither can it be applied in an arbitrary or discriminatory manner. Four States Realty, 309 So.2d at 672. This is especially true where, as here, the ordinance utilizes a definition that touches upon and attempts to regulate an institution as vital and fundamental as the family. As the Supreme Court cautioned in Moore v. City of East Cleveland, Ohio, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977), “when the government [in regulating zoning] intrudes on choices concerning family living arrangements,” a court “must examine carefully the importance of the governmental interests advanced and the extent to which they are served by the challenged regulation.” Moore, 431 U.S. at 499, 97 S.Ct. 1932. The definition of “family” contained in the zoning ordinance at issue in Moore is, as the majority points out, distinguishable from that in the present case, and the interests sought to be vindicated by the government are narrower than those in Moore. Nevertheless, in examining and testing the validity of the City-Parish ordinance, we cannot ignore the wider implications of that ordinance when different rights, such as associational and privacy rights of individuals choosing to live together as extended family units are sought to be vindicated. In such a context, with such fundamental interests at stake, the definition of “family” in the City-Parish ordinance appears especially problematic.
This is not to suggest that the goal of the City-Parish ordinance is not legitimate. To the contrary, the purpose of A-l zoning — to ensure the availability of residential areas that provide open space, and *341 protect against the problems of over-_Jcrowding,3 traffic congestion, pollution, noise, and other nuisances associated with over-crowding[1] — are entirely appropriate and legitimate. The problem lies in attempting to accomplish these goals through the use of criteria based on biological and legal relationships that may not further, but actually inhibit, accomplishment of that goal. For example, the definition of family adopted by the ordinance would permit twenty distant cousins, all adults possessing their own vehicles, to reside together but prohibit three unrelated elderly individuals, or even nuns, without independent means of transportation, from living together in a single unit. The current definition of “family,” thus, distinguishes between acceptable and prohibited uses on grounds which may, in many instances, have no substantial, or even rational, relationship to the problems sought to be ameliorated.
Significantly, the existing definition additionally creates enforcement problems for the City-Parish government. As counsel for the City-Parish acknowledged at oral argument, the current definition of “family” can prevent foster parents and children from residing together. While insisting that this exclusion has never and is unlikely to create a problem (which raises concerns about the potential for selective enforcement by the City-Parish), in fact the ordinance’s definition may run afoul of the Federal Housing Act, 42 U.S.C.A. § 3601, et seq., which includes foster children in its definition of “familial status” and makes it illegal, as the majority acknowledges, to “refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin.” Cox v. City of Dallas, Texas, 430 F.3d 734, 740 (5th Cir.2005), cert. denied, 547 U.S. 1130, 126 S.Ct. 2039, 164 L.Ed.2d 783 (2006); see 42 U.S.C.A. § 3602(k) (quoted in majority |4opinion). A landlord who learns, whether inadvertently or by direct inquiry, of the presence of foster children in the household of a potential lessee appears faced with the unenviable and irreconcilable dilemma of either violating the federal statute or the municipal ordinance.
In the final analysis, while lines must be drawn in defining what for zoning purposes will constitute a single-housekeeping unit, and no line will be perfect, the line that has been drawn by the current City-Parish ordinance in its definition of “family,” protects against only marginally, if at all, the ills it seeks to ameliorate. Moreover, under the right factual scenario and with the properly aligned interests, the line drawn by the ordinance would fail to withstand constitutional scrutiny, as there are clearly more logical, rational, and reasonable means of accomplishing the stated goals.

. As explained at trial by Collin Magee, Land Use and Zoning Coordinator for the City-Parish.