# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 03-0195


DAN RHODES ENTERPRISES, INC.

VERSUS

CITY OF LAKE CHARLES


**\*\*\*\*\*\*\*\*\*\***


ON APPLICATION FOR SUPERVISORY WRIT,
FOURTEENTH JUDICIAL DISTRICT COURT,
PARISH OF CALCASIEU, NO. 01-6308
HONORABLE FRED R. GODWIN, DISTRICT JUDGE


**\*\*\*\*\*\*\*\*\*\***


**JIMMIE C. PETERS**
**JUDGE**


**\*\*\*\*\*\*\*\*\*\***


Court composed of Billie Colombaro Woodard, Jimmie C. Peters, and Michael G. Sullivan, Judges.

**AFFIRMED.**

Woodard, J., dissents and assigns written reasons.

**Charles Schrumpf**
**3801 Maplewood Drive**
**Sulphur, Louisiana  70663**
**(337) 625-9077**
**COUNSEL FOR  PLAINTIFF/APPLICANT:**
  **Dan Rhodes Enterprises, Inc.**

**Christopher E. John**
**Assistant City Attorney**
**Post Office Box 900**
**Lake Charles, Louisiana  70602**
**(337) 491-1523**
**COUNSEL FOR  DEFENDANT/RESPONDENT:**
  **City of Lake Charles**

PETERS, J.

The plaintiff, Dan Rhodes Enterprises, Inc. (DRE), appeals the trial court's grant of a summary judgment dismissing his suit against the City of Lake Charles, Louisiana (the City). For the following reasons, we affirm the trial court's judgment.

This litigation arises because, in the year 2000, the City annexed certain immovable property into its corporate limits. Prior to the annexation, DRE had leased parts of the property to operate seasonal fireworks sales establishments. When the property became a part of the City, it also became subject to the City's ordinance prohibiting the sale of fireworks within the corporate limits. The ordinance's application to the annexed property had the effect of preventing DRE from continuing its fireworks sales on the leased property. DRE brought this suit to recover its lost profits from the City, asserting that the annexation constituted an unconstitutional taking of its property.

The City answered DRE's suit, asserting a number of defenses, including the assertion that the annexation did not constitute an unconstitutional taking of the corporation's property. Thereafter, the City filed a motion for summary judgment, which is the subject of this appeal.

In support of its motion for summary judgment, the City offered the following:

(1)     The deposition testimony of Daniel Dwayne Rhodes, the owner and sole shareholder of DRE.

(2)     A copy of a lease of a parcel of land measuring 100 feet by 200 feet fronting Country Club Road in Calcasieu Parish, Louisiana, entered into between Joseph A. Natali as lessor and DRE as lessee, dated March 16, 2000, having a primary term of May 2, 2000, to May 1, 2001, with nine options to renew on a yearly basis.

(3)     A copy of a letter to Mr. Natali from Mr. Rhodes, acting on behalf of DRE, exercising the option to renew the March 16, 2000 lease.

(4)     A copy of a lease of a trapezoid-shaped parcel of land with one

side measuring 105 feet and fronting Nelson Road entered into between Jodie D. Dorsey as lessor and DRE as lessee, dated March 6, 2001, covering a one-month period from June 16, 2001, through July 15, 2001, but limiting the sale of fireworks to the period from June 25, 2001, through July 5, 2001.

(5)     The affidavit of Ernest Broussard, the director of planning and economic development for the City of Lake Charles.

In opposition to the motion for summary judgment, DRE offered the following:

(1)     The deposition testimony of Mr. Rhodes.

(2)     The deposition testimony of Mr. Dorsey.

(3)     Copies of the following leases of a trapezoid-shaped parcel of land with one side measuring 105 feet and fronting Nelson Road entered into between Mr. Dorsey as lessor and DRE as lessee.

Lease dated May 9, 1994, covering the period from May 10, 1994, through May 9, 1995, but limiting the sale of fireworks to the period from June 25 through July 4, 1994, and from December 15, 1994, through January 1, 1995.

Lease dated May 6, 1995, covering the period from May 10, 1995, through May 9, 1996, but limiting the sale of fireworks to the period from June 25 through July 4, 1995, and from December 15, 1995, through January 1, 1996.

Lease dated March 22, 1996, covering the period from May 10, 1996, through May 9, 1997, but limiting the sale of fireworks to the period from June 25 through July 4, 1996, and from December 15, 1996, through January 1, 1997.

Lease dated April 7, 1997, covering a two-month period from May 20, 1997, through July 20, 1997, but limiting the sale of fireworks to the period from June 25, 1997, through July 5, 1997.

Lease dated September 10, 1997, covering the period from October 1, 1997, through September 30, 1998, but limiting the sale of fireworks to the period from December 15, 1997, through January 1, 1998, and from June 25, 1998, through July 5, 1998. This particular lease provided for two one-year options to renew.

Lease dated September 29, 2000, covering a two-month period from November 10, 2000, through January 9, 2001, but limiting the sale of fireworks to the period from December 15, 2000, through January 1, 2001.

Lease dated November 17, 2001, covering a fifty-day period

2

between November 17, 2001, through January 5, 2002, but limiting the period of actual sales to thirty days.

Lease dated March 6, 2001, covering a one-month period from June 16, 2001, through July 15, 2001, and being the same lease submitted by the City in support of the motion for summary judgment.

The leases described above differ in some respects, but all contain the same basic provisions. None of the leases were placed of public record in Calcasieu Parish.

After a hearing, the trial court granted the City's motion for summary judgment and dismissed the corporation's suit. DRE timely perfected this appeal, asserting three assignments of error.

A. The trial court erred in finding that both the Natalie [sic] and Dorsey leases terminated under the provisions of Civil Code Articles 1966 and 1968 without any loss or damage to the plaintiff being recoverable.

B. The trial court erred in failing to find that this was not a unique damage suffered by the plaintiff in this case unlike that suffered by others in the normal exercise of the police powers.

C. The trial court erred in not finding that a material issue of fact precluded summary judgment, since Rhodes was told that the Lake Charles City Planner said the sites would be grandfathered in and he relied upon this statement to his detriment.

**OPINION**

Appellate courts review summary judgments *de novo* under the same criteria that govern the trial court's consideration of whether or not summary judgment is appropriate in any given case. *Cormier v. Albear*, 99-1206 (La.App. 3 Cir. 2/2/00), 758 So.2d 250. Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B).

In this case, the record establishes little factual dispute. The seasonal sale of

3

fireworks at various Calcasieu Parish locations is only one of DRE's business activities. The two locations at issue in this litigation were leased from Mr. Dorsey and Mr. Natali. The Dorsey property is located on Nelson Road and was annexed into the City on July 29, 2000. The Natali property is located on Country Club Road and was annexed into the City on December 5, 2000. Upon being annexed, the properties became subject to the City's ordinance which prohibits the sale of fireworks within the city limits. DRE terminated its fireworks sales at both locations and brought this suit to recover its loss of profits caused by the annexation.

The Natali lease in effect on December 5, 2000, contained the following language:

> If fireworks sales from this location ever become illegal due to a change in the laws, then the lease shall be terminated and any unearned rent will be returned as follows: If sales should become illegal before the New Year's Season, LESSOR will refund the entire rent for the year.

The trial court concluded that this provision terminated the lease effective December 5, 2000, and that DRE's remedy was limited by this provision.

The Dorsey property was not subject to any written lease on July 29, 2000, but it is not disputed that DRE and Mr. Dorsey had an oral agreement concerning the property. The trial court relied on La.Civ.Code arts. 1966 and 1968 to conclude that any lease with Mr. Dorsey was terminated by the annexation. Louisiana Civil Code Article 1966 provides that "[a]n obligation cannot exist without a lawful cause." Additionally, La.Civ.Code art. 1968 provides that "[t]he cause of an obligation is unlawful when the enforcement of the obligation would produce a result prohibited by law or against public policy."

While we agree with DRE that the contract provisions and the Louisiana Civil Code Articles relied upon by the trial court relate to the relationship between lessor and lessee, and not to the relationship between DRE and the City, for other reasons

4

we find no error in the trial court's grant of the summary judgment.

DRE contends on appeal that the trial court erred in failing to find that "the annexation by the City of Lake Charles [was] a taking under Louisiana Constitution Article 1, Section 4, and [that DRE] is . . . entitled to inverse condemnation damages." Louisiana Constitution Article I, § 4, provides in part:

> Every person has the right to acquire, own, control, use, enjoy, protect, and dispose of private property. This right is subject to reasonable statutory restrictions and the reasonable exercise of the police power.
> Property shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into court for his benefit.

In determining whether a claimant is entitled to eminent domain compensation, "the court must (1) determine if a right with respect to a thing or an object has been affected; (2) if it is determined that property is involved, decide whether the property has been taken or damaged in a constitutional sense; and (3) determine whether the taking or damaging is for a public purpose under Article I, § 4." *Constance v. State, Through Dep't of Transp. & Dev.*, 626 So.2d 1151, 1157 (La.1993), *cert. denied*, 512 U.S. 1219, 114 S.Ct. 2706 (1994).

Importantly,"the courts of this State have long recognized a lessee's status under law to require compensation for expropriation of lease property." *State, Dep't of Transp. & Dev. v. Jacob*, 483 So.2d 592, 594 (La.1986). Nevertheless, under the undisputed facts of this case, as a matter of law, the "property" was not "taken or damaged" by the annexation for purposes of eminent domain compensation. In *Annison v. Hoover*, 517 So.2d 420, 423 (La.App. 1 Cir. 1987), *writ denied*, 519 So.2d 148 (La.1988), the first circuit held that "a regulatory program that adversely affects property values does not constitute a taking unless it destroys a major portion of the property's value." The annexation did not prohibit DRE from leasing the properties

at issue; it simply prohibited the corporation from selling fireworks within corporate limits.

We find *Cheshire v. City of Minden*, 83 So.2d 526 (La.App. 2 Cir. 1955), instructive in this regard. In *Cheshire*, residents and/or owners of property situated in an area which the City of Minden purposed to annex sought to have annulled the ordinance allowing for such annexation. The plaintiffs contended, among other things, that (1) the inclusion of their property within the corporate limits under the terms of the ordinance constituted a taking or a damaging of their property in that the property would be subject to future municipal taxes for the retirement of bond issues, the funds of which were of no value or benefit to their property, and (2) their drive-in theater on their property would be subject to the Sunday closing ordinance with the consequent loss of revenue in its operation. The second circuit found these contentions to be without merit. In so holding, the court stated:

> The fact that the property in the territory proposed to be annexed will become subject to additional taxes and to the regulations provided by the existing municipal ordinances, with the possible loss of revenue from the operation of the business establishment located therein, does not in our opinion constitute a taking of such property for a public purpose within the intent and meaning of [La.Const. art. I, § 2 (1921), currently incorporated into La.Const. art. I, § 4 (1974), and U.S. Const. amends. V and XIV]. It has been held that the legislature has the power to enlarge the limits of towns and cities. The contrary wishes of the inhabitants and the imposition of taxes on the annexed territory to pay the existing debts of the city do not render the Act unconstitutional.
>   . . . .
> Moreover, in Angelle v. State, 212 La. 1069, 34 So.2d 321, 323, 29 A.L.R.2d 666 [(1948)], it was held that the constitutional provisions prohibiting the taking or damaging of private property, except for public purposes, refers exclusively to the power of eminent domain, that is, the intentional or purposeful expropriation or appropriation of private property for a public use or convenience.
> We are likewise of the opinion there is no merit in plaintiffs' contention that their property interest in the drive-in theatre will be adversely affected by its inclusion in the extension of the City limits. That such theatre might be regulated by appropriate ordinances of the City is not one of the grounds provided in LSA-R.S. 33:174 [regarding

suits to contest the reasonableness of proposed extensions of corporate limits] for attacking the ordinance or the extension of the municipal corporate limits. No constitutional question is there presented. Property is acquired and held subject to the regulation of its use by the governing authorities under the exercise of their police power.

*Id.* at 527-28 (citations omitted).

In looking with favor on the rationale of the *Cheshire* decision, we recognize that it was decided when the 1921 Louisiana Constitution was in effect. However, for purposes of the specific facts and issue in this case we do not find this to present a meaningful distinction.[1] We agree with the holding in *Cheshire* that the fact that property in the territory proposed to be annexed will become subject to regulations provided by the existing municipal ordinances, with the possible loss of revenue from the operation of a business establishment located therein, does not constitute a taking of such property for a public purpose. As provided in current La.Const. art. I, § 4, and as suggested in *Cheshire*, while a person has the right to acquire, own, control, use, enjoy, protect, and dispose of private property, this right is subject to reasonable statutory restrictions and the reasonable exercise of the police power. To conclude otherwise would have a chilling effect on any proposed municipal annexation.

Finally, we reject DRE's contention that the trial court erred in not finding a material issue of fact precluded summary judgment regarding whether the City planner informed DRE that the property in question would be "grandfathered in," causing him to rely on this statement to his detriment.

In his deposition, Mr. Rhodes stated that Mr. Natali told him that Mr. Broussard had told Mr. Natali that DRE would be grandfathered in and would not have to

---

[1] Louisiana Constitution Article I, § 2 (1921) provided: "No person shall be deprived of life, liberty or property, except by due process of law. Except as otherwise provided in this Constitution, private property shall not be taken or damaged except for public purposes and after just and adequate compensation is paid."

7

comply with the City ordinance. However, he also testified that when he communicated directly with Mr. Broussard, he was told that the issue would have to be addressed by the Lake Charles City Council. Additionally, even assuming that Mr. Broussard communicated the possibility of being grandfathered in to Mr. Natali, there exists no evidence that Mr. Broussard had the authority to make such a representation.

Louisiana Civil Code Article 1967 provides in part that "[a] party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying." However, it further states that "[r]eliance on a gratuitous promise made without required formalities is not reasonable." DRE acknowledges that the authority to grant it the right to continue in business lies with the governing body of the City, and not with Mr. Broussard. Thus, his reliance on Mr. Broussard's comments, if such comments were actually made, is unreasonable given the need of formal action from the Lake Charles City Council. *See Andrus v. Andrus*, 93-856 (La.App. 3 Cir. 3/2/94), 634 So.2d 1254. Thus, we find no merit in this argument.

## DISPOSITION

For the foregoing reasons, we affirm the trial court's grant of summary judgment in favor of the City of Lake Charles, Louisiana, dismissing the claims of Dan Rhodes Enterprises, Inc. We assess all costs of this appeal to Dan Rhodes Enterprises, Inc.

**AFFIRMED.**

03-195

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

DAN RHODES ENTERPRISES, INC.

VERSUS

CITY OF LAKE CHARLES

On appeal from the Fourteenth Judicial District Court [Number 01-6308], for the Parish of Calcasieu, State of Louisiana; the Honorable Fred R. Godwin, District Judge, presiding.

Woodard, J., dissenting.

I respectfully dissent from the majority's opinion because I do not believe that *Cheshire*, the basis for the majority's ruling, is applicable to this case.

In *Cheshire*, the Plaintiff was challenging the constitutionality of the ordinance, itself. As I appreciate it, DRE is not attempting to challenge the ordinance. Rather, it alleges that the City's refusal to deny it a variance constituted a taking, at least, as far as the sums it had already invested in anticipation of sales for the next season. The City's actions deprived it of the income it expected to realize and relied on generating for the next season. The United States Supreme Court has recognized this deprivation of an investment-backed expectation to be a taking.[1]

Often, in cases in which zoning results in a nonconforming use of property, the governing body will permit variances that allow the property owner to continue the business for a short period of time, specifically, so that he has an opportunity to recoup resources that he invested before the use became illegal. [2] This time period, which serves as a grace period for the property owner, either, to conform his business to comply with the new zoning restrictions or to apply for rezoning of the property is

---

[1]*Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104 (1978).

[2]Jay M. Zitter, Annotation, *Validity of Provisions for Amortization of Nonconforming Uses*, 8 A.L.R. 5th 391 (1992); *see also State ex rel. Dema Realty Co. v. Jacoby*, 123 So. 314 (La.1929).

called an amortization period.[3] The amortization period for the nonconforming use gives the business operator time to recoup funds s/he put towards the property's use before the use is terminated.

Louisiana Revised Statutes 33:4725.1(A) supports this proposition and provides:

> Except as provided by Subsection B of this Section, if after August 15, 1999, a municipality annexes property the use of which is governed by a parish zoning ordinance at the time of annexation, and the annexation causes a change in the zoning classification, *the parish zoning classification shall remain in effect until the owner of the property has applied for rezoning with the appropriate municipal governing authority, board or commission or for a period of six months, whichever occurs first. . . .*

Thus, the above provision expressly addresses instances in which an annexation of property, which effectively rezones it, adversely affects the landowner. Particularly, in cases such as the instant one, in which neither the ordinance nor the annexation is unconstitutional, the property owner is left without a remedy for the adverse effects of the annexation. Thus, the above provision intends to provide a remedy in such cases; that being to allow the property owner a six-month amortization period to recoup any sums s/he has already invested in the non-conforming use of the property.

Unfortunately, because DRE's business operated, only, seasonally, it was unable to utilize this amortization period. Notwithstanding, it exercised the alternative of applying for a variance from the City, the appropriate governing authority. Indeed, DRE's cause of action would not have been ripe for court action without the City's prior denial of a variance.[4] The question for the court, then, becomes whether the municipal board or authority's denial of the variance was reasonable under all the circumstances.[5]

Initially, the City denied the variance. However, a special meeting was called to revote on the issue, at which time, not enough council members were present to

---

[3]*Id.*

[4]*King v. Caddo Parish Comm'n*, 97-1873 (La. 10/20/98); 719 So.2d 410.

[5]*Id.*

grant the variance. While the ordinance prohibiting fireworks sales within city limits is an important ordinance contained in the City's Life Code and is a valid exercise of its police power, this is not determinative of the "takings" issue. Rather, the determinative question is whether the City's denial of the variance was reasonable under all the circumstances. [6] This is a factual inquiry which was inappropriately determined on summary judgment.

Furthermore, we should not dispose of DRE's detrimental reliance theory on summary judgment. DRE claims that it invested money based upon its reliance on licenses the State and the Parish granted it after the annexation, as well as on Mr. Broussard's assurance to Mr. Natali that DRE's business would be "grandfathered in." If these facts can be proved, they could support a remedy under detrimental reliance. Thus, it is counter-intuitive to grant summary judgment on this basis.

Accordingly, summary judgment was inappropriate under either theory of recovery, and I would reverse.

---

[6]*King*, 719 So.2d 410.