RESIDENTS OF HIGHLAND ROAD, LLC,
v.
THE PARISH OF EAST BATON ROUGE; THE METROPOLITAN COUNCIL OF THE PARISH OF EAST BATON ROUGE AND THE CITY OF BATON ROUGE; BRIAN MAYER (IN HIS CAPACITY AS ADMINISTRATOR OF THE METRO COUNCIL).
No. 2008 CA 2542.
Court of Appeals of Louisiana, First Circuit.
July 22, 2009.
Not Designated for Publication
DALE R. BARINGER, BENJAMIN J. B. KLEIN, Counsel for Plaintiff/Appellant Residents of Highland Road, LLC.
MARY ROPER, Parish Attorney, CARL JACKSON, LEO J. D'AUBIN, GWENDOLYN K. BROWN, Special Assistant Parish Attorneys, Counsel for Defendant/Appellee City of Baton Rouge/Parish of East Baton Rouge, The Metropolitan Council of the City of Baton Rouge/Parish of East Baton Rouge and Brian Mayers.
DAVID M. COHN, Counsel for Intervenor, America Homeland, LLC.
Before: KUHN, GUIDRY, and GAIDRY, JJ.
GAIDRY, J.
Plaintiff, Residents of Highland Road, LLC (RHR), appeals the involuntary dismissal of its suit challenging the rezoning of two tracts of undeveloped property. For the following reasons, we amend, in part, and affirm.

FACTS AND PROCEDURAL BACKGROUND
America Homeland, LLC, is the owner of two tracts of undeveloped property located on the southeast and southwest corners of the intersection of Bluebonnet Boulevard and Highland Road in Baton Rouge, Louisiana. In March 2006, applications were filed on its behalf requesting that both pieces of property be rezoned from A-1 (Single Family Residential) to LC-1 (Light Commercial One). The applications also requested an amendment to the Horizon Plan[1] to incorporate the rezoning of the properties. The staff of the Planning Commission recommended the applications be denied on the basis that the proposed rezoning was inconsistent with the Horizon Plan and with the "adjacent land use character." After the Planning Commission denied the request, America Homeland appealed that decision to the Metropolitan Council for the City of Baton Rouge/Parish of East Baton Rouge (Metro Council), which held a public hearing on the matter at its September 6, 2006 zoning meeting. A large contingent of nearby residents spoke in opposition to the rezoning, primarily citing concerns about preserving the unique scenic and historic character of Highland Road, as well as traffic congestion. The Metro Council ultimately deferred the matter to its next zoning meeting.
The Metro Council held a second public hearing at its September 20 meeting at which numerous members of the public again opposed the rezoning. In addition, America Homeland presented the Metro Council with a letter stating that, in the event the council voted to approve rezoning of the property, it would record deed restrictions limiting the LC-1 uses available for the property to those listed in the letter.[2] Thereafter, a motion was made before the Metro Council to deny the rezoning. In the discussion that ensued, the possibility of limiting access to the property from Highland Road was raised. Councilman Ulysses Addison made a substitute motion to approve the rezoning request with the stipulations that the deed restrictions mentioned in America Homeland's letter limiting the permitted usages of the property be recorded and that there be limited access off of Highland Road.
After further discussion, Councilman Joe Greco, acting as chairman of the Metro Council, instructed the council administrator, Brian Mayer, to repeat the motion to be voted on. Mayer then stated the question before the Metro Council as follows:
Council members, we have two motions on the floor. The first that we will vote on is the substitute motion by Councilman Addison, seconded by Councilman Walker, to approve the rezoning request for cases 13-06 and 14-06, with the understanding that the deed restrictions  the restrictions mentioned will be filed.
So we  there's an original motion which  by Councilman Skyring, seconded by Councilman Culbertson to deny the rezoning on these two cases. Again, we will be voting on the substitute motion by Councilman Addison to approve the rezoning on both cases, with the understanding that the deed restrictions mentioned will be filed. Is that clear? (Emphasis added.)
Since the proposed rezoning had been disapproved by the Planning Commission, a two-thirds vote of the Metro Council or eight affirmative votes was required in order for the motion to pass. See Metro Plan[3] § 10.04(b) & 10.05; U.D.C.[4] §3.04B & 3.05. Mayer declared that the vote was seven in favor, three against, and two abstentions. He further stated that the motion had failed and began to say that a vote would be taken on the original motion. However, he was interrupted before he completed his statement. Greco, who had abstained from the original vote, indicated he now wished to vote on the substitute motion. He then proceeded to enter an affirmative vote, which resulted in passage of the substitute motion. Greco then called for a vote on the next item and instructed Mayer to proceed. Mayer then stated:
[T]he motion that was approved, the rezoning request that's indicated on the agenda for cases 13 and 14-06, was approved with the understanding that the deed restrictions mentioned in the letter dated September 20th would be recorded by the applicant.
Councilman Pat Culbertson then interjected that the motion also included a provision that access to Highland Road would be restricted, and he wanted that also recorded. The council attorney responded that that condition was not included in the motion as stated by Mayer immediately prior to the vote. When asked directly whether he had included limited access in his substitute motion, Councilman Addison declined to answer. At that point, a motion was made and seconded to reconsider the matter, but it failed to win passage.
Following the action of the Metro Council, the deed restrictions mentioned as a condition for passage of the substitute motion were duly recorded. Subsequently, several individuals who lived near the property at issue formed RHR, which filed suit challenging the rezoning ordinances passed by the Metro Council and seeking injunctive relief, declaratory judgment, and a writ of mandamus. The Parish of East Baton Rouge, the Metro Council, and Brian Mayer, in his capacity as the "Council Administrator", were named as defendants in the suit. America Homeland intervened in the suit, alleging RHR's suit was frivolous and should be dismissed. America Homeland also sought damages it alleged it would sustain as a result of the delay in the development of the subject property that it claimed was caused by the filing of this suit.
Trial of this matter, including both the principal demand and intervention, was scheduled for October 1, 2007. RHR filed an amended petition on September 25, alleging, in the alternative, that the rezoning ordinances were unconstitutionally vague. In response, America Homeland filed a motion to strike the allegations regarding unconstitutional vagueness. At the same time, it also filed a motion to sever the damages portion of its claim from the remaining claims.
At the beginning of trial, the court denied both the motion to strike and the motion to sever filed by America Homeland. RHR then proceeded with presentation of its case. At the conclusion thereof, America Homeland and EBRP each moved for involuntary dismissal of RHR's demands. The trial court orally granted the motions for involuntary dismissal, specifically finding that "nothing that the Metro Council has done is outside the scope of their authority." The trial court further stated that:
I don't know what information each individual council member took into account when making this decision, but that's their decision. They voted eight to, I think, two on this item. They chose not to reconsider the item. Therefore, the Court finds that the ordinance that the council adopted is a good ordinance, and unless the council decides that they want to amend that ordinance, then this Court feels that it is not its place to step in and amend that ordinance for them.
After the dismissal of RHR's suit, neither the court nor any of the parties mentioned America Homeland's intervention. Despite the fact the trial court had earlier denied its motion to sever, America Homeland offered no evidence in support of its damage claim.
Subsequently, the trial court rendered a written judgment dismissing the demands of both RHR and America Homeland.[5] RHR appealed the judgment, raising the following four assignments of error:
1. The trial court erred in failing to issue a writ of mandamus based on a finding that the rezoning ordinances as published do not accurately reflect the action of the Planning Commission or the Metro Council in that: a) the ordinances erroneously state that the Planning Commission approved the zoning change; and b) the ordinances fail to include the condition imposed by the substitute motion that the property at issue have "limited access off of Highland Road."
2. The trial court erred in failing to find the rezoning ordinances invalid on the basis that they failed to receive the eight votes necessary for passage, since Councilman Greco improperly was allowed to change his vote without the requisite unanimous approval of the Metro Council.
3. The trial court erred in failing to find the rezoning ordinances invalid on the basis that the Metro Council failed to follow the requirements of Sections 3.04(B), 3.05, 19.1, 19.4, and 19.7 of the United Development Code, and Section 10.04(b) of the Metro Plan, thereby constituting arbitrary and capricious action.
4. The trial court erred in failing to find that the rezoning ordinances were invalid, null and void, on the basis that they were unconstitutionally vague.
America Homeland answered the appeal, raising as its only assignment of error that the trial court erred in denying the motion to sever the damage portion of its claim and in dismissing its intervention with prejudice. Additionally, America Homeland seeks damages for frivolous appeal.

STANDARD OF REVIEW
In Louisiana, a challenge to a zoning decision is a de novo proceeding in which the issue is whether the result of the legislation is arbitrary and capricious, and is therefore a taking of property without due process of law. Palermo Land Co., Inc. v. Planning Commission of Calcasieu Parish, 561 So.2d 482, 492 (La. 1990). The test of whether a zoning authority's action is arbitrary and capricious is whether the action is reasonable under the circumstances. On appeal, a reviewing court does not consider whether the district court was manifestly erroneous in its findings but, rather, whether the zoning board acted arbitrarily, capriciously or with any calculated or prejudicial lack of discretion. King v. Caddo Parish Commission, 97-1873, pp. 14-15 (La. 10/20/98), 719 So.2d 410, 418.
Additionally, to the extent that this appeal involves issues unrelated to the exercise of the Metro Council's zoning discretion, those issues are subject to the standard of review normally applied to the grant of an involuntary dismissal. In such cases, the manifest error standard of review is applicable. Under this standard, the trial court's findings will not be disturbed unless we find, after review of the record, that there is no factual basis for the findings or that the findings are clearly wrong or manifestly erroneous. Broussard v. Voorhies, 06-2306, p. 4 (La. App. 1st Cir. 9/19/07), 970 So.2d 1038, 1042-43, writ denied, 07-2052 (La. 12/14/07), 970 So.2d 535.

ASSIGNMENT OF ERROR NUMBER ONE
RHR contends the trial court erred in failing either to invalidate the zoning ordinances adopted by the Metro Council or to issue a writ of mandamus directing that the ordinances be corrected to conform to the action actually taken by the Metro Council.[6] RHR argues that the ordinances do not accurately reflect the action taken by the Metro Council because they fail to include the condition of limited access off of Highland Road that it alleges was part of the substitute motion adopted by the Metro Council.
The record is clear that in making his substitute motion, Councilman Addison moved that the rezoning of the property be adopted "with the ... amendments that it be deed restricted and limited access off of Highland Road." However, in stating the question to be voted on by the Metro Council, Mayer, the council administrator, used the following language:
Council members, we have two motions on the floor. The first that we will vote on is the substitute motion by Councilman Addison, seconded by Councilman Walker, to approve the rezoning request for cases 13-06 and 14-06, with the understanding that the deed restrictions  the restrictions mentioned will be filed.
So we  there's an original motion which  by Councilman Skyring, seconded by Councilman Culbertson to deny the rezoning on these two cases. Again, we will be voting on the substitute motion by Councilman Addison to approve the rezoning on both cases, with the understanding that the deed restrictions mentioned will be filed. Is that clear? (Emphasis added.)
RHR insists that the language Mayer used somehow incorporated by reference the condition of limited access off of Highland Road. It is RHR's position that Mayer made no mistake in stating the motion, and that the substitute motion approved by the Metro Council included the condition of limited access. Thus, RHR argues the zoning ordinances must be invalidated because the Metro Council was arbitrary and capacious in failing to ensure they conformed to the motion actually approved. Alternatively, RHR contends it is entitled to a writ of mandamus directed to the Metro Council and Mayer ordering them to correct the ordinances to include the condition of limited access off of Highland Road.
Despite RHR's strenuous contentions to the contrary, it is plain that a discrepancy existed between the substitute motion made by Councilman Addison and Mayer's statement of the motion to be voted on by the Metro Council. Unlike the motion made by Addison, Mayer's statement failed to include any reference to limited access to Highland Road. Moreover, we find no merit in the argument that Mayer's use of the phrase, "the restrictions mentioned," somehow incorporated the condition of limited access to Highland Road. It is clear that the restrictions Mayer was referring to were the deed restrictions he had just mentioned. This conclusion is buttressed by the fact that, in stating the motion to be voted on for the second and final time, Mayer stated that the substitute motion was to "approve the rezoning on both cases, with the understanding that the deed restrictions mentioned will be filed." Again, he made no mention of limited access off of Highland Road.
The procedural rules of the Metro Council do not directly address a situation such as the present one where a discrepancy exists between a motion made by a councilman and the restating of that motion for a vote. However, the Baton Rouge City Code does provide that any point of procedure arising at a council meeting that is not covered in the rules of procedure or by law shall be determined by the rules provided in Robert's Rules of Order. See B.R.C.C., Title 1, § 8. On the point at issue, Robert's Rules of Order provides that, where the wording of the question put to the assembly is erroneous, the exact wording used in putting the question to a vote is definitive. See RONR (10th Ed.), p. 42, I. 28  p. 43, 1. 1. Thus, the motion that the Metro Council actually voted on and approved was the motion as stated by Mayer, which did not include the condition of limited access off of Highland Road.[7]
Furthermore, it is highly significant that, after questions were raised concerning limited access off of Highland Road, a motion to reconsider the matter was made and seconded. The Metro Council had the option at that point to reconsider the matter and add limited access as an additional condition, if the substitute motion it adopted did not reflect its will. However, in the exercise of its discretion, it chose not to do so; the motion to reconsider failed.
Under La. C.C.P. art. 3863, a writ of mandamus may be directed to a public officer to compel the performance of a ministerial duty required by law. However, since the zoning ordinances at issue accurately reflect the action taken by the Metro Council, RHR has failed to establish entitlement to any mandamus relief. For the same reason, RHR's assertion that the Metro Council was arbitrary and capricious in failing to ensure the zoning ordinances conformed to the action taken by the council is equally without merit.

ASSIGNMENT OF ERROR NUMBER TWO
RHR contends the trial court erred in not declaring the zoning ordinances invalid because they failed to receive the eight votes necessary for their passage. Specifically, RHR argues Councilman Greco's vote was invalid and, therefore, should not have been counted because the vote on the substitute motion already had been finally announced, and the Metro Council had moved on to the next item, before Greco indicated he wished to change his vote. Under such circumstances, RHR asserts unanimous approval of the Metro Council, which was not obtained in this case, was necessary for Greco to change his vote.
As noted by RHR, eight votes were required for passage of the substitute motion, since the requested zoning change was disapproved by the Planning Commission. See Metro Plan § 10.04(b) & 10.05; U.D.C §3.04B and 3.05. The record reveals that, after a vote was taken on the substitute motion, Mr. Mayer declared that the vote was seven in favor, three against, and two abstentions, and that the motion had failed. Immediately thereafter, the following exchange occurred with Councilman Greco, who had abstained from the original vote:
Mr. Mayer: We'll vote on the original motion 
Mr. Greco: No.
Mr. Mayer:  now which will be 
Mr. Greco: No. I wanted to vote on that...
Councilman Greco indicated he wanted to vote "yes" on the motion. Mr. Mayer responded that, according to the council rules, a vote could be changed prior to the council "moving on." An affirmative vote was then entered on Greco's behalf, which resulted in passage of the substitute motion. No objection was raised to Greco's vote.
Baton Rouge City Code 1951, Title 1, § 9(a)(6) provides that:
Any member of the council has the right to change his vote up to the time the vote is finally announced. ... After the vote has been finally announced, no member shall be permitted to change his vote except by unanimous consent. (Emphasis added.)
Thus, under this provision, Councilman Greco had an unqualified right to enter a "yes" vote on the substitute motion as long as a "final announcement" of the vote had not occurred. However, if a final announcement had taken place, unanimous approval of the Metro Council was required for Greco to enter a vote. The trial court rejected RHR's contention that Greco's vote was invalid, concluding that he "chose to vote prior to moving on to the next item."
The City Code does not define what constitutes a final announcement. However, Robert's Rules of Order does provide some guidance on this issue, although it does not specifically define a "final announcement." Rather, it provides that the following four elements are necessary for a "complete announcement," which we determine is comparable to a final announcement:
1. Report of the voting itself, stating which side "has it"  that is, which side is more numerous....
2. Declaration that the motion is adopted or lost.
3. Statement indicating the effect of the vote, or ordering its execution, if needed or appropriate....
4. Where applicable, announcement of the next item of business, or (in the case of "secondary" motions ...) stating of the question on the next motion that consequently comes up for a vote. RONR (10th Ed.), p. 46, 1. 13-32.
Applying these guidelines to the present case, we find no error in the trial court's conclusion that Greco's vote was valid, agreeing that he entered his affirmative vote in favor of the substitute motion prior to the Metro Council moving on the next item of business. While Mayer may have begun to say that the Metro Council should vote on the next item of business, he never completed that announcement.[8] As the record demonstrates, he was interrupted by Greco before he stated the question on the next motion. Accordingly, since no final announcement had occurred at the time Greco indicated he wanted to vote, his vote was properly entered, and the substitute motion passed with the requisite eight affirmative votes.

ASSIGNMENT OF ERROR NUMBER THREE
In this assignment of error, RHR maintains the zoning ordinances were passed without following proper procedures and, therefore, constitute arbitrary and capricious action by the Metro Council. In particular, it asserts there was no evidence that the requirements of U.D.C. § 19.7 (which sets forth criteria for rezoning) were met in this case. RHR further argues that no rational basis existed for allowing commercial zoning at this particular intersection, and that the Metro Council failed to adequately take into account the strong opposition to the rezoning, as well as the unique historic and scenic character of Highland Road.
Zoning is a legislative function, the authority for which flows from the police power of governmental bodies. Because zoning falls under the jurisdiction of the legislature, courts will not interfere with their prerogative unless their action is palpably erroneous and without any substantial relation to the public health, safety or general welfare. King, 97-1873 at p. 14, 719 So.2d at 418. Courts will not substitute their wisdom for that of the zoning authority, except where there is an abuse of discretion or an excessive use of power. Four States Realty Co., Inc. v. City of Baton Rouge, 309 So.2d 659, 672 (La. 1974) (on rehearing).
In a zoning case, the petitioner bears a burden of proving that the action taken by the zoning body in acting on a zoning change was arbitrary and capricious. The Louisiana Supreme Court has described the burden of proving the invalidity of a rezoning ordinance as an "extraordinary" one. The petitioner must establish that a real or substantial relationship to the general welfare is lacking. Palermo, 561 So.2d at 490. If it appears that appropriate concerns for the public could have been the motivation for a zoning ordinance, it will be upheld. Palermo, 561 So.2d at 492. Moreover, it is well-established that a presumption of validity attaches to zoning ordinances. This presumption applies to all zoning ordinances, including piecemeal and spot zonings. Palermo, 561 So.2d at 491. Finally, debatable cases will be resolved in favor of the validity of the challenged zoning enactment. Palermo, 561 So.2d at 493.
In the present case, the record reveals that appropriate and well-founded concerns for the public could have been the motivation for passage of the ordinances attacked by RHR. Before taking its final vote, the Metro Council held two public meetings, listened to the concerns of numerous members of the public, and engaged in substantial debate on this matter. During debate references were made to the economic benefits that could be derived from the commercial development of the subject property, as well as to the historic character of Highland Road. Additionally, America Homeland presented the Metro Council with the testimony of a traffic engineer who testified that the proposed development would result in a minimal traffic increase, as well as the testimony of its engineer who described the manner in which it was anticipated the developer would limit access to and from Highland Road. Moreover, due to concerns expressed by nearby residents as to the type of businesses that could be included in the project if LC-1 zoning was granted, the developer presented the Metro Council with a letter voluntarily limiting the types of business that could be included in the project to those listed in the letter. He further agreed to record deed restrictions so limiting the property. In fact, it was these deed restrictions that Councilman Addison incorporated into his substitute motion.
It was also pointed out that the subject property has a frontage of approximately nine hundred feet on Bluebonnet Boulevard and only approximately two hundred feet on Highland Road. Furthermore, except at its intersection with Highland Road, Bluebonnet Boulevard is largely commercial in nature. There was also discussion about the fact that, although there is no commercial development on Highland Road within several miles of this particular intersection, there is commercial development on Highland Road at a number of its other intersections with major thoroughfares.
Based on the circumstances and evidence presented, we conclude RHR failed to meet its heavy burden of proving that the action of the Metro Council was arbitrary and capricious. RHR has not sufficiently established that the rezoning was unreasonable and bore no substantial relationship to the public health, safety, or general welfare and, thus, has not overcome the presumption of validity accorded to zoning ordinances. There may be room for debate and a reasonable difference of opinion as to whether this particular property should have been rezoned. However, it is not appropriate for courts to substitute their opinion for that of the zoning authority, except in the case of an abuse of discretion or excessive use of power. See Four States, 309 So.2d at 672. As the Louisiana Supreme Court noted in State ex rel. Civello v. City of New Orleans, 154 La. 271, 97 So. 440, 444 (1923), if a majority of citizens are dissatisfied with the actions of a zoning authority, "their recourse is to the ballot-not the courts."
RHR further contends the Metro Council failed to comply with Metro Plan §10.05 and U.D.C. §3.05 because the ordinances that were actually approved were not the same ones submitted to the Planning Commission for review. Unified Development Code §3.05 provides that:
No ordinance or resolution adopting, amending, supplementing, changing or modifying any regulation or restriction or district boundary authorized by such laws to be made by the Metropolitan Council shall be passed by the Metropolitan Council until such ordinance or resolution has been submitted to and approved by the Planning Commission ... and provided further that an ordinance or resolution disapproved by the Planning Commission may be adopted by the Metropolitan Council by not less than eight (8) affirmative votes.
Metro Plan §10.05 sets forth an almost identical provision.[9]
RHR argue that, since Councilman Addison's substitute motion substantially amended the proposed ordinances that were previously submitted to the Planning Commission, the Metro Council was required to resubmit the amended ordinances for the Planning Commission's review before voting on the matter. They contend that, in the absence of compliance with this procedural requirement, the zoning ordinances were null and void, since the Metro Council is required to follow its own procedural rules.
While we have no problem with the general proposition that the Metro Council is bound to follow its own procedural rules, we disagree with RHR's contention that the Metro Council was required to resubmit the revised ordinances to the Planning Commission in this case. The Planning Commission had already reviewed the proposed changes in zoning on the property from A-1 to LC-1. Although the Metro Council made a revision to the original zoning ordinances at its September 26th meeting, the revised amendment did not affect the zoning reclassification issue already considered by the Planning Commission, i.e., the requested change in zoning classification from A-1 to LC-1. Rather, it merely added the condition that certain deed restrictions be filed. Given the nature of the revision, we do not believe it was of such magnitude that a resubmission to the Planning Commission was required under U.D.C. §3.05 and Metro Plan §10.05, or any other provision. The proposed zoning classification had already been reviewed and rejected by the Planning Commission.[10]
Accordingly, RHR has failed to establish either that the Metro Council violated any applicable procedural requirements or that its rezoning decision in this case was arbitrary or capricious. This assignment of error lacks merit.[11]

ANSWER TO APPEAL
In an answer to this appeal, America Homeland argues the trial court erred in denying his motion to sever and in dismissing his intervention with prejudice. Initially, we note that the trial court's judgment actually states that it is dismissing America Homeland's "reconventional demand," rather than its intervention. It is apparent from the record that this mistake was a clerical error, since neither America Homeland nor any other party in this suit filed a reconventional demand. In fact, the intervention was the only demand filed by America Homeland in this matter. La. C.C.P. art. 2164 provides that an appellate court "shall render any judgment which is just, legal, and proper upon the record on appeal." Accordingly, in the interest of justice, we will amend the trial court judgment to correct this clerical error. See Harvey v. Traylor, 96-1321 (La. App. 4th Cir. 2/5/97), 688 So.2d 1324, 1329, writ denied, 97-0587 (La. 4/18/97), 692 So.2d 454.
Turning to the merits, America Homeland argues that the trial court erred in refusing to sever trial of the damage portion of its incidental demand from trial of the main demand. This damage claim consisted of business losses America Homeland alleged it will suffer as a result of the delay in developing the property at issue. It further asserts the filing of the instant suit by RHR is the cause of that delay. America Homeland contends the trial court should have granted the severance because its damage claim was "not yet ripe or fully developed" at the time of trial due to the short period of time between the filing of RHR's suit and trial on the merits, although it asserts these damages would increase over time. It contends there was no good reason for the trial court to deny the severance.
The record reveals that RHR filed its suit on May 25, 2007, and America Homeland filed its incidental demand on July 3, 2007. Trial of both the principal and incidental demands was set for October 1, 2007. There is no indication America Homeland raised any objection to this trial date. Moreover, trial of this matter was scheduled to begin on a Monday, and America Homeland waited until the preceding Friday to file its motion to sever its damage claim.
America Homeland argues its late filing of the motion to sever was excusable because RHR did not file an answer to its intervention until September 27. It asserts this was its first opportunity to see the responses and defenses raised by RHR to its intervention. However, America Homeland fails to point out any specific response or defense raised by RHR that took it by surprise or necessitated additional trial preparation time.
A trial court has discretion in determining whether an incidental demand should be severed for trial from the main demand. See Sparacello v. Andrews, 501 So.2d 269, 274 (La. App. 1st Cir. 1986), writ denied, 502 So.2d 103 (1987); White v. Cumis Insurance Society, 415 So.2d 574, 578 (La. App. 3rd Cir.), writ denied, 420 So.2d 164 (1982); see also La. C.C.P. art. 465. In this case, the damage claim was intertwined with the main demand, since the outcome of the main demand would have great relevance on the merits of the damage claim. Thus, judicial economy warranted trying the main demand and incidental demand together. Moreover, if America Homeland felt that its damage claim was not fully developed, it could have objected to the trial date when it was set or filed its motion to sever earlier. Instead, the trial court indicated that all parties, including America Homeland, had agreed in a phone conference that all issues would be tried in one setting on the scheduled trial date. Given these circumstances, the trial court did not abuse its discretion in denying both the motion to sever filed by America Homeland only days before trial and its subsequent motion to reconsider that ruling.
Additionally, America Homeland argues the trial court went too far in dismissing its intervention with prejudice. Basically, it asserts that its intervention should have been severed from the main demand rather than dismissed, since its damages were not fully developed at the time of trial. America Homeland further contends that its intervention was simply forgotten after the trial court granted the motions for involuntary dismissal of RHR's demands and it was never called for trial.
The record reflects that neither the trial court nor any of the parties mentioned the intervention after the dismissal of RHR's demands. However, the fact that the trial court had unequivocally denied America Homeland's motion to sever at the beginning of trial, was a clear indication that the court expected America Homeland to present its case at trial. Otherwise, the ruling on the motion to sever would be rendered meaningless. Nevertheless, America Homeland failed to present any evidence or even to argue in support of its intervention. The trial court specifically relied on this fact in dismissing the intervention with prejudice.
Due to the denial of its motion to sever, America Homeland was well aware that it was required to make out its claim at trial. The burden of proving damages is borne by the party claiming the damages. See Frierson v. Sheridan, 593 So.2d 655, 657 (La. App. 1st Cir. 1991). Moreover, the parties to a proceeding have the primary responsibility of presenting evidence. See La. C.E. art. 611 A.[12] Accordingly, it was the responsibility of America Homeland to move forward with its case.
America Homeland had an opportunity to present evidence in support of its claim, but failed to do so. It was not prevented by the trial court in any manner from presenting its case. The assertion that its intervention was forgotten does not mitigate America Homeland's total failure to present any evidence in support of its claim, because it was the responsibility of America Homeland to move its case forward. In fact, America Homeland has admitted on appeal that it had sustained "little or no damage at the time of trial." America Homeland does not argue that it had any evidence available at the time of trial that it could have presented to establish its claim. Nor did it alert the court at the time of trial that it had any evidence to present. Under these circumstances, we find no error in the dismissal of the intervention in its entirety, with prejudice.
Lastly, America Homeland argues it is entitled to an award for costs and attorney fees of not less than $10,000 as damage for frivolous appeal. It asserts that the only purpose of the appeal taken by RHR was to further delay the development of the property at issue.
Under La. C.C.P. art. 2164, an appellate court may award damages for frivolous appeal. However, courts are very reluctant to grant damages under this article, since it is penal in nature and must be strictly construed. Even when an appeal lacks serious legal merit, damages for frivolous appeal will not be awarded unless it is clear that the appeal was taken solely for the purpose of delay or that the appellant was not serious in the position he advocated. Assaleh v. Sherwood Forest Country Club Inc., 07-1939, p. 11 (La. App. 1st Cir. 5/2/08), 991 So.2d 67, 74.
Based on our review of the record in the instance case, we do not find that an award for frivolous appeal is warranted. Although we have found no merit in RHR's appeal, we cannot say that the appeal was taken solely for the purpose of delay. To the contrary, it appears that RHR was serious in the position it advocated on appeal. Accordingly, we decline to award damages for frivolous appeal.

CONCLUSION
For the above reasons, the judgment of the trial court is hereby amended to provide that there be judgment in favor of Plaintiff, Residents of Highland Road, LLC, and against the Intervenor, America Homeland, LLC, dismissing the intervention of America Homeland with prejudice at Intervenor's cost. The judgment of the trial court is affirmed in all other respects. The costs of this appeal are to be borne equally by Residents of Highland Road, LLC, and America Homeland, LLC.
AMENDED IN PART AND, AS AMENDED, AFFIRMED.
NOTES
[1] The Horizon Plan is a master land use and development plan for the physical development of the City of Baton Rouge and Parish of East Baton Rouge (EBRP). See U.D.C. § 3.04A.
[2] The permissible uses delineated m the letter were: art galleries; art studio (no outside production or storage); banks (with or without drive-through lanes and/or ATM machines); dry cleaners (no on-premise cleaning); educational, religious and philanthropic institutions; farmer markets; financial institutions (with or without drive-through lanes and/or ATM machines); governmental buildings and facilities, police, fire, EMS, libraries, post office, offices and other facilities utilized for governmental functions and activities; health clubs and/or country clubs; medical clinics; offices; personal service and retail shops; public open space; public parks; restaurants (specifically restaurants without drive-through service); and retail sales.
[3] Plan of Government, Parish of East Baton Rouge, City of Baton Rouge.
[4] Unified Development Code for the Parish of East Baton Rouge, City of Baton Rouge.
[5] We note that the portion of the judgment actually dismissing the demands of RHR and America Homeland refers to the parties by their procedural status, rather than by name. Nevertheless, since the parties are clearly identified by name elsewhere in the judgment, it is readily ascertainable who the trial court is referring to in every instance. Accordingly, the judgment is not defective in this respect. See Hammonds v. Reliance Insurance Company, 06-0540 (La. App. 1st Cir. 12/28/06) (NFP); see also Reawc v. City of Baton Rouge, 01-1585, pp. 4-5 (La. App. 4th Cir. 3/20/02), 815 So.2d 191, 194-95, writ denied, 02-1068 (La. 6/14/02), 817 So.2d 1158.
[6] RHR also points out that the preambles of the zoning ordinances erroneously state that the Zoning Commission approved the requested changes, when the Commission, in fact, did the opposite. The significance of this fact is that, when the Planning and Zoning Commission disapproves a rezoning request, an ordinance granting the rezoning must receive no less than eight affirmative votes in the Metro Council. See Metro Plan § 10.05; U.D.C. § 3.05. However, since the ordinances at issue did receive eight votes, this factual misstatement in no way affects their validity. Furthermore, we note that RHR did not specifically request mandamus relief directing the correction of this particular error in either its original or amending petition.
[7] RHR alleges it is clear that Councilman Addison's intent was to include limited access off of Highland Road in his substitute motion. Regardless, his intent is immaterial, since the plain language of the motion voted on by the Metro Council did not include the condition of limited access. It is well-established that where the wording of legislation is clear and unambiguous and its application leads to no absurd consequences, no further interpretation may be made in search of the intent of the legislative body. See La. C.C. art. 9; Thibodeaux v. Donnell, 08-2436, p. 7 (La. 5/5/09), 9 So.3d 120, 125.
[8] Incidentally, it is questionable whether Mayer possessed the authority to instruct the Metro Council to move on to the next item of business. As chairman of the Metro Council, it appears that authority rested with Councilman Greco. A review of the proceedings reveals Greco was in charge of conducting the meeting. Testimony was given at trial that, although Mayer sometimes assisted Greco in conducting meetings, he served in deference to Greco, as well as all other council members. Moreover, while Greco did instruct Mayer to state for the council the motion to be voted on, there is no indication he completely delegated his authority to conduct the meeting to Mayer.
[9] See also U.D.C. § 3.04B; Metro Plan § 10.04(b).
[10] The present case is distinguishable in this respect from Cush v. Bossier City, 149 So.2d 196 (La. App. 2d Cir.), writ denied, 244 La. 149, 150 So.2d 769 (1963), which RHR cites as support for its contention that the zoning ordinances herein are null and void. In Cush, the court invalidated a zoning ordinance because it was amended by the City Council of Bossier City, then adopted without first submitting the amended ordinance to the planning commission. The court found that this omission violated legislation that was similar to U.D.C. §3.05 and Metro Plan §10.05. However, unlike the present case, the amendment made by the City Council in Cush completely changed the proposed zoning classification of the subject property from B-2 (Neighborhood Business District) to B-1. Obviously, this amendment was of a totally different nature and of much greater substance than the revision in the instant case.
[11] RHR also raised a fourth assignment of error, arguing that, in the event the zoning ordinances were corrected to include the condition of "limited access off of Highland Road," those ordinances would be unconstitutionally vague since that term is not sufficiently defined to permit objective enforcement of the ordinances. However, in view of our earlier conclusion that the ordinances do not include the condition of "limited access," we pretermit consideration of this assignment of error.
[12] Louisiana Code of Evidence article 611A provides that:

Except as provided by this Article and Code of Criminal Procedure Article 773, the parties to a proceeding have the primary responsibility of presenting the evidence and examining the witnesses. The court, however, shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to:
(1) Make the interrogation and presentation effective for the ascertainment of the truth;
(2) Avoid needless consumption of time; and
(3) Protect witnesses from harassment or undue embarrassment.